**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN HOSPITAL ASSOCIATION and HEALTH FORUM LLC, | |
| Plaintiffs, | |
| v. | Case No. |
| PATIENTRIGHTSADVOCATE.ORG, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

**<u>COMPLAINT</u>**

Plaintiffs American Hospital Association (AHA) and Health Forum LLC hereby file this Complaint against Defendant PatientRightsAdvocate.org, Inc. (PRA), and allege based on personal knowledge as to their own conduct and acts and events taking place in their presence, and on information and belief as to all other conduct, acts, and events, as follows:

**INTRODUCTION**

1.     The AHA's mission is to advance the health of all individuals and communities. As part of that mission, over the last 50 years the AHA has created and continually updated a detailed taxonomy of unified billing codes and a standard billing form to use them (today, the "UB-04" codes and Form). These resources streamline the process by which hospitals and other providers can submit requests for and receive payments from public and private payers. The unified billing codes and UB-04 Form have become widely adopted in America's healthcare-payment system, enabling holistic and reliable billing and claims processes that allow providers and payers to communicate more clearly and efficiently. Without them, the basic "plumbing" of our healthcare system would not work as effectively.

1

2.     The AHA has devoted countless hours and significant resources every year to making creative judgments about how relevant healthcare data should be best arranged, selected, and analyzed—to prevent fractured, inefficient, and duplicative billing processes.  The UB-04 codes and Form are the products of this decades-long creative enterprise.  The AHA exercises judgment year-round in considering whether to add, remove, or adjust codes in light of developments in the dynamic healthcare sector.  The copyright laws exist to encourage precisely this kind of "creative endeavor."  *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979 (7th Cir. 1997).

3.     The UB-04 codes and Form are a social good—a common vocabulary that enhances clarity and lowers transaction costs for medical providers and payers, and in turn decreases overall healthcare costs.  For years, many private and public payers across the healthcare landscape have recognized the utility of the many creative choices embodied in the UB-04 codes and regular updates—and have chosen to adopt the AHA's expression of these codes as a valuable tool in collecting and organizing healthcare payment data.  This coding system, managed voluntarily by the AHA, unifies a once-balkanized healthcare-payment landscape.

4.     Delivering this social good is not free.  Continually evaluating whether and how to revise the codes requires creativity and judgment.  That effort and ingenuity are the result of the AHA's substantial, ongoing investment of both time and resources, including the extensive efforts of AHA employees who oversee the process of updating and improving the codes.  If the AHA could not prevent unauthorized dissemination, its ability and incentive to continue updating and improving its content would be severely undermined.  *E.g.*, *Practice Management Information Corp. v. Am. Medical Ass'n*, 121 F.3d 516, 519 (9th Cir. 1997) ("Non-profit organizations that develop these model codes and standards warn they will be unable to continue to do so if the codes and standards enter the public domain when adopted by a public agency.").

5.      The AHA carefully balances its mission to serve the cause of public health with its need to secure the resources to support this work by making the expression of these creative choices available to the public for a reasonable cost.  Specifically, the AHA publishes the UB-04 codes and Form—together with extensive explanatory and instructional content—in annually updated versions of its *Official UB-04 Data Specifications Manual* (*UB-04 Manual*), in which the AHA has federally registered copyrights.  And through its wholly owned subsidiary, Plaintiff Health Forum LLC, the AHA sells licenses to annual versions of the *UB-04 Manual*.  By accepting those licenses, purchasers expressly agree not to distribute any part of the *UB-04 Manual* to third parties and not to challenge the AHA's intellectual-property rights in it.  The AHA also separately licenses the UB-04 codes to third-party software developers for a fraction of the per-user cost of the complete *UB-04 Manual*; these developers then create and market applications that enable end-users to make use of the AHA's content.  Through these arrangements, the AHA makes the benefits of the *UB-04 Manual*, Form, and codes widely available while preserving its ability to be compensated for its ongoing investment of time, resources, and dedicated employee efforts.

6.      Defendant PRA, however, has expressly announced its intention to nullify the AHA's intellectual-property rights by making the *UB-04 Manual*, including all of the codes and accompanying explanatory material, freely available to the world.  On November 13, 2025, PRA's counsel informed the AHA by letter that PRA had "purchased access to" the *UB-04 Manual* "and plans to make the *Manual* freely available online to the public at large."  Ex. 4, at 1.  PRA demanded that the AHA promptly forswear enforcing its legal rights against PRA for posting the entire *UB-04 Manual* online for anyone to download.  *Id.*  PRA threatened that, unless the AHA swiftly accedes, PRA will "consider litigation."  *Id.* at 3.

3

7.     The AHA accordingly brings this action to prevent PRA's unlawful publication, distribution, or other exploitation of the *UB-04 Manual* and to make clear the AHA's legal rights against such abuse.  On information and belief, Plaintiffs anticipate that discovery will show that PRA has already taken steps to reproduce the *UB-04 Manual* or to create a derivative work in violation of the exclusive rights created by the U.S. Copyright Act.  But PRA's planned publication of the entire *UB-04 Manual* online would be a far more flagrant violation of both federal copyright law and PRA's own contractual commitments in the license agreement it executed when it purchased a copy.

8.     First, PRA's misappropriation and planned publication of the *UB-04 Manual* online is a textbook infringement of the AHA's exclusive rights under federal copyright law to reproduce, distribute, and display its work and to make derivative works.  17 U.S.C. § 106.  The AHA undisputedly owns the copyrights to annual editions of the *UB-04 Manual*, which is a privately authored work developed, refined, and kept current through the AHA's creative efforts and at its expense. The *UB-04 Manual*'s dynamic content—published and registered anew on an annual basis—reflects the creativity of AHA employees, who exercise judgment in considering requests to update codes and adapt their content to the ever-changing needs in the healthcare sector.  And it is difficult to posit a more clear-cut violation of the Copyright Act than making a copyrighted work freely available to anyone in the world.

9.     PRA's only proffered justification for eviscerating the AHA's exclusive rights under copyright law is its demand letter's legally erroneous assertion that the *UB-04 Manual* somehow lost all copyright protection because some legal authorities refer to or require resort to its content.  Ex. 4, at 2.  That contention contravenes Supreme Court precedent and first principles of copyright law.  And any such argument would be off-limits to PRA in any event because PRA has

accepted the terms of a license agreement that requires recipients to agree *not* to "challenge" the AHA's or Health Forum's "proprietary rights and ownership of" the *UB-04 Manual*, including "copyrights." Ex. 3, § 4. PRA's theories of copyright law are untenable, but they are also beside the point because PRA has agreed not to raise them in any challenge to the AHA's copyrights.

10. Second, PRA's threatened conduct would violate its contractual commitments in the license agreement twice over. In purchasing the *UB-04 Manual*, PRA agreed that it would *not* share the *UB-04 Manual* with others, Ex. 3, § 1, or "disclose to * * * or allow any third party to have access" the *UB-04 Manual* or its contents, *id.* § 4. PRA's planned publication would be a brazen breach of that contractual pledge. And bringing "litigation" to contest the AHA's "copyright notice" and to seek judicial invalidation of the AHA's rights (Ex. 4, at 2-3), as PRA has threatened to do, would breach PRA's promise not to "challenge" the AHA's intellectual property in the *UB-04 Manual*, Ex. 3, § 4.

11. The AHA and Health Forum therefore bring this lawsuit to protect the AHA's valuable intellectual property by enforcing the AHA's rights under federal copyright law and its contract, and by holding PRA to the bargain that it struck in buying the *UB-04 Manual*. This Court should permanently enjoin PRA from facilitating a massive theft of the AHA's copyrighted content by disclosing all or part of the *UB-04 Manual* to any third parties. The Court also should declare that any publication would violate both the Copyright Act and the license agreement. And the Court should declare that PRA has expressly waived any challenge to the *UB-04 Manual*'s copyright protection and cannot attack the AHA's intellectual-property rights in litigation, which it contractually promised not to commence.

## PARTIES

12.     Plaintiff AHA is an Illinois non-profit corporation with its principal place of business at 155 N. Wacker Drive, Suite 400, Chicago, Illinois, 60606.

13.     Plaintiff Health Forum LLC is a wholly owned subsidiary of the AHA and is an Illinois limited-liability company with its principal place of business at 155 N. Wacker Drive, Suite 400, Chicago, Illinois, 60606.

14.     Upon information and belief, Defendant PRA is incorporated under Massachusetts law and has publicly represented its principal place of business variously as 1188 Centre Street, Newton, Massachusetts, 02459, and as 360 S. Rosemary Avenue, Suite 1410, West Palm Beach, Florida, 33401.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over Plaintiffs' claim arising under federal copyright law.

16.     In addition, this Court has subject-matter jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' state-law breach-of-contract claims, which are so related to the federal claims that they form part of the same case or controversy and derive from the same common nucleus of operative facts.

17.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a) over all claims because the parties' citizenship is completely diverse and because PRA's threat to publish the *UB-04 Manual* and to contest the *UB-04 Manual*'s copyright protection puts more than $75,000 in controversy.

18.     This Court has personal jurisdiction over PRA because, among other reasons, PRA agreed by contract that "[a]ll disputes arising out of" its license to use the *UB-04 Manual* "shall

be exclusively brought in the state and federal courts in and near Chicago, Illinois" and "irrevocably submit[ted] to the personal jurisdiction of such courts," Ex. 3, § 7; and because PRA's threatened copyright infringement would foreseeably cause harm to the AHA and Health Forum in Chicago. PRA also has purposefully availed itself of the benefit of conducting, soliciting, and transacting business in the State of Illinois by, for example, creating and publishing an annual "Hospital Price Transparency Report" report for Illinois that purports to track more than 60 hospitals within the State (including 18 in Chicago)—which PRA promotes to residents within this District through an interactive website that PRA intends to use to engage with residents in this District.

19.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because PRA may be found in this District; because this Court has personal jurisdiction over PRA; and because Plaintiffs' claims arose, in substantial part, in this District. Among other things, PRA may be "found" in this District, *id.* § 1400(a), because it consented to personal jurisdiction through a forum-selection provision, and PRA expressly aimed its action at this District, where the AHA prepares the *UB-04 Manual*, where the AHA through Forum Health LLC licenses access to the *UB-04 Manual*, and where the AHA has suffered and will continue to suffer harm from PRA's unlawful acts.

**FACTS**

**A.    The AHA And The *UB-04 Manual***

20.    Founded in 1898, the AHA represents more than 5,000 hospitals, healthcare systems, and other healthcare organizations, and has more than 42,000 individual members.

21.    The AHA's mission is to advance the health of all individuals and communities. The AHA does this through advocacy, education, research, and setting standards to promote quality, affordable, and accessible care for everyone.

22.     The AHA provides education for healthcare leaders and is a source of information on healthcare issues and trends.

23.     Together with its educational leadership, the AHA is a vital standards-setting body for healthcare providers nationwide.  The AHA spent years developing a single, standard billing document—the UB-04 Form—which hospitals, other healthcare providers, payers, and clearing-houses use nationwide to process healthcare reimbursement claims.

24.     The AHA spends considerable time producing and publishing annual editions of the *UB-04 Manual*, which contains up-to-date codes and instructions for completing the UB-04 Form.

25.     The AHA's UB-04 Form identifies a core set of data about services provided to a patient in a hospital or other healthcare facility, the clinical basis for treatment, related events surrounding the patient's care, and other information needed by third-party payers.  Each of these data elements is assigned a numbered field on the UB-04 Form.

26.     The AHA has developed 14 sets of codes that can be used to complete those fields on the UB-04 Form.  These codes represent important information about the claim, such as the type of facility in which treatment was provided, the patient's condition, the patient's discharge status, the diagnosis and procedures performed, and any specific accommodation, ancillary service, or special billing calculations or arrangements.

27.     Before the AHA began its standardization efforts in the 1970s, each payer across the country typically used its own unique code set and required unique billing information and forms.  This chaotic mix of practices resulted in extensive payment delays, duplicative work, and inefficiencies for providers, payers, and patients.

28.     In 1975, the AHA created the National Uniform Billing Committee (NUBC) to begin the years-long process of creating one standardized data set and billing form that could be used nationwide by hospitals, other healthcare providers, and payers to process healthcare claims.

29.     The AHA has maintained responsibility for leading, managing, and funding the NUBC since the committee's inception.  The AHA is the NUBC's secretariat, and AHA employees serve permanently as the NUBC's Chair and Secretary, who together oversee and orchestrate the NUBC's review of proposed changes to the *UB-04 Manual* and the form, codes, and data set.

30.     Other members of the NUBC are volunteers.  These members include providers, payers, health IT vendors, the National Association of Medicaid Directors, and other representatives who can offer input on proposed changes to the AHA's codes.  In joining the NUBC, each member expressly disclaims ownership of any proprietary right in the AHA's codes and acknowledges that the AHA alone holds such proprietary rights, including the copyrights.

31.     The AHA spent seven years and invested considerable effort and resources in creating a standard billing form and supporting materials, culminating in the UB-82 Form and data set in 1982.

32.     The federal government long ago recognized the value of streamlining hospital administration costs and convened an industry Workgroup for Electronic Data Interchange (WEDI).  Published in 1992, WEDI's recommendations to the Secretary of Health and Human Services noted that:

> existing standards setting groups, such as the National Uniform Billing Committee * * * , have achieved some measure of uniformity and, in doing so, reduced the cost and burden associated with claims submission and processing.  The National Uniform Billing Committee maintains a data specifications manual that attempts to define the data elements used to complete the uniform hospital billing form used by all hospital payors and providers. Thus, in attempting to achieve greater uniformity, caution needs to be exercised to avoid disrupting the limited uniformity that has been achieved to date.

33.     In line with these recommendations, Congress passed the Health Insurance Porta-bility and Accountability Act of 1996 (HIPAA), which required the Secretary to establish uniform standards for health transactions.  Pub. L. No. 104-191, § 262(a), 110 Stat. 2024 (42 U.S.C. § 1320d-2).  The Secretary endorsed the AHA's Uniform Billing Form content, noting that uni-form adoption by payers and providers "will improve the Medicare and Medicaid programs and other Federal health programs and private health programs, and the effectiveness and efficiency of the health care industry in general, by simplifying the administration of the system and enabling the efficient electronic transmission of certain health information."  65 Fed. Reg. 50,312, 50,312 (Aug. 17, 2000).  Regulations later issued under HIPAA require claims submitted electronically to use a particular electronic-data-interchange standard that is in turn based on that content.  *See*, *e.g.*, 45 C.F.R. § 1652.1102.

34.     The AHA responded to changes in the provider and payer community landscapes by updating the UB-82 Form and supporting materials with superseding versions.  The AHA later offered a redesigned UB-92 Form and published an updated *UB-92 Manual*.  But with increasing use, the AHA recognized the need for even more significant updates and led a four-year study that involved numerous public surveys and discussions at various NUBC meetings.  Based on this input, the AHA overhauled the UB-92 codes and published the first version of the *UB-04 Manual* (the 2007 Edition) in 2006.

35.     The AHA has since continually updated and refined the *UB-04 Manual* with year-round revisions.  The AHA monitors the ever-evolving healthcare marketplace for important new health-policy developments and real-time changes to the healthcare landscape.  The AHA then produces and proposes needed changes to the *UB-04 Manual* to ensure that UB-04 content ad-dresses current healthcare needs.

36.     When providers and payers (public and private alike) or other stakeholders request changes to the *UB-04 Manual*, the AHA reviews the request, conducts appropriate research, and determines whether a proposed change warrants presentation to the NUBC's members. The AHA schedules the meetings at which the NUBC's members, including the AHA itself, review proposed changes. The AHA typically provides the NUBC's members with relevant background information on the proposed change and, either before or after consideration by the NUBC, frequently drafts specific language for code updates. The AHA also creates or edits proposed descriptions and other written material that accompanies new or adjusted codes in the *UB-04 Manual*. The AHA staff performing these functions are supported by the *UB-04 Manual*'s sales and work out of the AHA's Chicago office.

37.     After the NUBC approves changes to the *UB-04 Manual*, AHA employees arrange the new or revised codes and accompanying written material. AHA employees select where and how within the *UB-04 Manual* new content should be presented (taking account, for example, of the similarity of adjacent codes or relation to other subject matter). The AHA then promulgates updates, which are provided to licensees throughout the year and included in the next annual edition of the *UB-04 Manual*.

38.     The AHA's active monitoring and real-time adjustments require creativity and judgment in responding to breaking, on-the-ground developments in the realities of providing healthcare. For example:

    a.     Hospitals and payers adapted to the COVID-19 pandemic in many ways; hospitals provided care in locations outside their facility (*e.g.*, parking lots), and payers waived various limitations on payment. Then-prevailing pre-pandemic billing codes did not adequately capture the changes in how hospitals were providing care and how payers

had adjusted coverage requirements. The AHA responded by adjusting its codes to capture changes in the reimbursement process.

b.    Following a national cyberattack in February 2024 that delayed hospitals' billing submissions, the AHA developed code adjustments to allow delayed submission of billing for care. The AHA led this coding response to the largest healthcare data breach in American history. It monitored the evolving situation, drafted edits to the *UB-04 Manual*, steered the NUBC's review of those changes, and released the update to licensees of the *UB-04 Manual*.

39.    Like the federal government, state governments have recognized the UB-04 Form and codes as a useful, uniform standard for billing. State governments—in their role as payers— have long elected to rely on the uniform coding system set forth in the *UB-04 Manual*.

40.    Based on the AHA's ongoing work and coordination to ensure that the codes meet payer needs, nearly all current healthcare payers—private healthcare insurers, federal payers like Medicare, state governments, etc.—use the UB-04 Form in their healthcare-billing requirements.

41.    Every year since 2006, the AHA has published a new edition of the *UB-04 Manual* that incorporates all changes and updates to the data specifications and the codes that have been adopted in the preceding year.

42.    The AHA's *UB-04 Manual* also provides detailed instructions for completing each numbered field on the UB-04 Form, including comprehensive explanations of the 14 sets of codes and frequently asked questions with answers. That written material is necessary to understand and complete code entry into the UB-04 Form properly and requires striking a balance between precision and ease of use.

43.     The AHA owns valid copyrights to the original and successive editions of the *UB-04 Manual* and its content that it has issued since 2006.  Most recently, the AHA secured a Certificate of Copyright Registration (No. TX 9-525-886) from the Register of Copyrights for the 2026 Edition of the *UB-04 Manual*, effective June 30, 2025.  A true and correct copy is attached hereto as Exhibit 1.  The AHA filed its copyright application within three months of the first publication of the 2026 Edition of the *UB-04 Manual*.  AHA's copyrights in all prior editions are also covered by, and enforceable based on, valid registrations.  True and correct copies of the available registration certificates for prior versions of the *UB-04 Manual* are attached hereto as Exhibit 2. (The 2008 and 2009 Editions—published in 2007 and 2008, respectively—are encompassed by and enforceable under AHA's registrations of later editions that encompass original material in the 2008 and 2009 Editions.  *See*, *e.g.*, *Enterprise Management, Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1057 (9th Cir. 2023) ("All circuits that have addressed this issue agree with th[e] conclusion" that, "when a derivative work includes copyrightable elements of the unregistered original work, the owner's registration of the derivative work also registers the included elements of the original work." (collecting cases)); *Joint Comm'n on Accreditation of Healthcare Orgs. v. Fortis Business Media, LLC*, 2017 WL 3895593, at *3-*4 (N.D. Ill. Sept. 6, 2017).)

44.     The AHA makes the *UB-04 Manual* available for purchase on its website through its digital-publishing software.  Purchasers of the *UB-04 Manual* designate the number of users for whom they are purchasing, and the price increases stepwise with the number of users.  For example, the 2026 *UB-04 Manual* costs $182 for a license for one user, $592 for 2-5 users, $1,131 for 6-10 users, $2,262 for 11-20 users, $3,446 for 21-32 users, and $4,523 for 33-50 users.  For multi-user licenses above 50 users, the AHA works directly with the purchaser on licensing terms tailored to their proposed uses.

45.     The AHA also licenses the UB-04 codes and other content to third-party entities that develop software programs that enable (a) hospitals and providers to submit claims on the UB-04 Form and (b) insurers to adjudicate claims and process payments back to hospitals and providers.  Third-party entities may offer software adapted to a hospital's electronic-record system or its billing system for efficient use of the codes.  These third-party entities set their own prices for the software that uses these codes, but the AHA itself charges these third-party entities less than 10% of the per-user cost of a license for *UB-04 Manual* for each user of such software programs.

46.     Anyone who is required to submit reimbursement claims on a UB-04 Form may access the codes by purchasing a license to the *UB-04 Manual* or software developed by the AHA's licensees.

**B.      The *UB-04 Manual*'s License Agreement**

47.     The AHA licenses access to and use of the *UB-04 Manual* through its wholly owned subsidiary, Health Forum, LLC.

48.     When purchasing a license for one to 50 users, all purchasers go through the same purchase process on the AHA's website.

49.     Each such purchaser must consent to an end-user license agreement to obtain access to the *UB-04 Manual* from the AHA.  A true and correct copy of the license agreement is attached hereto as Exhibit 3.  The license agreement is between the purchaser "and/or the organization on behalf of which an individual is making purchase" and "Health Forum, LLC, an American Hospital Association company."  Ex. 3, at 1.

50.     The license agreement expressly provides that licensees may not "share, broadcast, distribute, sell, lease, loan, transfer, reverse engineer, disassemble, modify, create derivative works of or translate the Content"—defined as the "products, data and other material" purchased in the

*UB-04 Manual*, "including all updates thereto"—"and may not use the Content in any service bureau or other commercial activity for use by third parties." Ex. 3, § 1.

51.    The license agreement further provides that the user shall keep the "Content confidential, disclose the Content only to those of Your employees that have a need to know such information, and shall not disclose the Content to any third party or allow any third party to have access to the Content." Ex. 3, § 4.

52.    The license agreement also requires that the user "acknowledge and agree" that "all Content is the proprietary and confidential information of Licensor and its licensors," *i.e.*, the AHA and Health Forum; "that Licensor and its licensors own all copyrights, trademarks, patents, trade secrets and other proprietary rights in and to the Content"; and that the user "will not challenge Licensor's and its licensors' proprietary rights in and ownership of the Content." Ex. 3, § 4.

53.    The AHA's website discloses the license agreement in the pre-purchase description of the *UB-04 Manual*. The description states that "[t]he online acceptance of a User License Agreement is required prior to completing the order transaction."

54.    If a purchaser proceeds to click "add to cart" after being informed of the license agreement's existence, the screen displays a pop-up window containing the license agreement. The website permits the purchaser to scroll through the terms. The website also offers the purchaser the options to "agree," "cancel" the purchase, or "print" the license agreement. The purchaser may not buy the *UB-04 Manual* without first clicking that the purchaser "agree[s]."

55.    The AHA similarly requires all purchasers of a license to use the *UB-04 Manual* for more than 50 users or a license for the codes (*e.g.*, for software) to agree not to disclose the licensed content to third parties or to challenge the AHA's proprietary rights, including the AHA's copyrights.

**C.** **PRA's Threats To Infringe The AHA's Copyright And Breach The License**

56.     PRA claims to support "systemwide healthcare *price* transparency"—a goal that many stakeholders in the healthcare landscape support.  The AHA, for example, recently noted in comments submitted to the Centers for Medicare & Medicaid Services that "[h]ospitals and health systems are dedicated to improving price transparency and look forward to working together with the Administration on this important goal."  American Hospital Association, *AHA Comments on CMS Request for Information on Hospital Price Transparency Accuracy and Completeness* (July 21, 2025), https://www.aha.org/lettercomment/2025-07-22-aha-comments-cms-rfi-hospital-price-transparency-accuracy-and-completeness.

57.     PRA, however, has recently purported to pursue its mission in a perplexing way: by making freely available online the entirety of the AHA's copyrighted *UB-04 Manual*.  That work has, at best, a tangential relationship to transparency of healthcare *prices*.  Rather, the *UB-04 Manual* provides a more efficient and nearly universal vocabulary for submitting and processing claims using thousands of codes to communicate various attributes of patients and medical services rendered on claims for payment.  Prices are set *by payers and/or providers*.  The *UB-04 Manual*'s codes merely enable a reader to translate what a claim for payment says about services already rendered.  But they tell consumers nothing about the prices that payers and providers chose to charge for those past services or what they would charge today.

58.     Nevertheless, PRA has set its sights on rendering valueless the AHA's intellectual-property rights in the *UB-04 Manual*.  In a letter to the AHA dated November 13, 2025, PRA (through counsel) made clear its intent to publish the *UB-04 Manual* for the world.  The letter states that PRA "has purchased access to the *Official UB-04 Data Specifications Manual* and plans to make the *Manual* freely available online to the public at large," supposedly to allow "patients,

plan sponsors, and auditors to understand hospital billing." A true and correct copy of PRA's November 13, 2025, letter is attached hereto as Exhibit 4.

59. The AHA's sales records do not reflect that PRA has purchased a license for the *UB-04 Manual* in its own name. However, the AHA's records do reflect that an associate attorney at PRA's law firm in connection with this matter (Consovoy McCarthy PLLC) purchased a copy of the *UB-04 Manual* in July 2025 using a personal Gmail address. On information and belief, and based on PRA's representation that PRA itself "purchased access to the *Official UB-04 Data Specifications Manual*," Ex. 4, at 1, Plaintiffs anticipate that discovery will show that this Consovoy McCarthy PLLC associate purchased the *UB-04 Manual* on behalf of PRA and did so using his Gmail address to obscure the true purchaser until PRA sent its November 13, 2025, demand letter.

60. Through whatever PRA officer, employee, or agent PRA purchased a license to access the *UB-04 Manual*, PRA necessarily agreed to the license agreement and thus became bound to its requirements that licensees not disclose the *UB-04 Manual*'s content to third parties or contest the AHA's proprietary rights in it. On information and belief, and based on PRA's representation that it "purchased access to the *Official UB-04 Data Specifications Manual*," that officer, employee, or agent had actual and apparent authority to bind PRA to the terms of the license agreement when that individual selected the options to "agree" to the license agreement rather than "cancel" the purchase and in fact obtained a copy of the *UB-04 Manual* for PRA's benefit. Any purchase by such person would bind PRA to the license agreement as the principal and/or as the downstream user of the *UB-04 Manual*.

61.     In support of its threat to publish *UB-04 Manual* online, PRA asserted "that the Manual is not a copyrightable work because it has been incorporated by reference into legally binding regulations."  Ex. 4, at 2.

62.     PRA's account gets the true dynamic backward.  The *UB-04 Manual* itself is not the law and does not purport to have the force of law in the way PRA asserts.  And no government actor is its author.  Instead, government actors—most often in their capacity as payers—have followed private payers' lead by aligning their activities with industry standards and by directing their claims personnel to request reimbursement claims that use the *UB-04 Manual*.  Private, mostly non-profit actors came together to address a common inefficiency with benefits for all participants, especially for patients.  Years later, federal and state governments embraced those private standards to "avoid disrupting the limited uniformity that ha[d] been achieved to date."  ¶ 32, *supra*.  Those governments' recognition of the AHA's sector leadership is a testament to the value of the AHA's work, which is protected by federal copyright law to ensure that the AHA is appropriately compensated for its contributions and encouraged to keep updating and producing a common coding language and accompanying written material that serves as a social good for public and private medical providers and payers.

63.     PRA also asserted that "the fair use doctrine permits PRA to make the *Manual* available to the general public," reiterating the same flawed premise that the federal and state government's use of the *UB-04 Manual* for reimbursement activities transforms the *UB-04 Manual* into "'the law.'"  Ex. 4, at 2 (citation omitted).  Its rhetoric cannot mask that, at bottom, PRA is threatening to promote and facilitate worldwide piracy of the full *UB-04 Manual*.  That use is as far from "fair" as an infringing use can be.

64.     PRA's demand letter admits to having "purchased access to the *Official UB-04 Data Specifications Manual*," Ex. 4, at 1, but fails to acknowledge PRA's contractual obligations under the license agreement not to disclose the *UB-04 Manual*'s content to third parties and not to challenge copyright protection for the *UB-04 Manual*.

65.     PRA concluded with a threat that, unless the AHA "confirm[s] by *December 15, 2025* that it will take no legal action against PRA for making the *Manual* available online," "PRA will consider litigation to confirm PRA's legal rights regarding this matter."  Ex. 4, at 3.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

66.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

67.     The AHA owns registered copyrights for the *UB-04 Manual*, including the 2026 Edition.  *See* Exs. 1, 2.

68.     The *UB-04 Manual* contains material that is wholly copyrightable subject matter under federal law.

69.     Content in the *UB-04 Manual* is original and includes a high degree of creativity.

70.     AHA employees direct the content of the *UB-04 Manual*.  The AHA established the NUBC, the AHA is the NUBC's secretariat, and AHA employees permanently serve as the NUBC's Chair and Secretary.  Acting in their capacity as AHA employees, the NUBC Chair and Secretary exercise creativity and judgment in adjusting codes to express concepts in the dynamic healthcare sector and preparing written materials to explain how to use and interpret the codes in preparing and interpreting claims for payment.  The volunteer members of the NUBC who partic-ipate in the process of contributing to the *UB-04 Manual* do so at the express direction and control

of the AHA's representatives on the committee, subject to a written understanding that the AHA does and will own the copyright in each successive version of the *UB-04 Manual*.

71.     Notwithstanding the AHA's ownership of the original content in the *UB-04 Manual*, PRA gained access to the *UB-04 Manual* by purchasing a copy of the 2026 Edition and has now threatened to display the *UB-04 Manual* on a public website without the AHA's consent.

72.     On information and belief, Plaintiffs anticipate that discovery will reveal that PRA or agents acting at its direction made one or more unauthorized copies of the *UB-04 Manual*—in preparation for its planned posting of the *UB-04 Manual* or in preparation for potential litigation—infringing the AHA's exclusive right to reproduce the *UB-04 Manual* under 17 U.S.C. § 106(1).

73.     PRA also has threatened to infringe the AHA's copyright in the *UB-04 Manual* by displaying the work in whole or in part on a website, in violation of the AHA's exclusive rights to reproduce, distribute, display, and make derivative works of the *UB-04 Manual* under 17 U.S.C. § 106(1), (2), (3), and (5).

74.     PRA's display and distribution of the *UB-04 Manual* would cause significant harm to the potential market for, and value of, the *UB-04 Manual*.  If potential licensees and other members of the public could gain access to the *UB-04 Manual* for free, they would be much less likely to pay the AHA for access to the UB-04 codes and Form.

75.     PRA erroneously asserts that the *UB-04 Manual* lost its copyright protection on the theory that it became "'the law'" when federal and state regulations required its use for certain purposes, such as submitting reimbursement claims.  Ex. 4, at 2 (citation omitted).  That contention conflates privately authored works to which the law *refers* with "the law" *itself*.  Private taxonomies of codes "do not 'become the law' merely because a statute refers to them" or "requires citizens to consult or use a copyrighted work in the process of fulfilling their obligations." *Veeck*

*v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791, 804-05 (5th Cir. 2002) (en banc).  Although PRA can freely publish "the law"—the text of the federal and state regulations—a privately authored work's copyright protection does not vanish just because the government refers to the work or requires consulting it.

76.     PRA also incorrectly asserts that the *UB-04 Manual* is uncopyrightable because carries the "'force of law.'"  Ex. 4, at 2.  That contention conflates a statute or regulation that imposes legally enforceable obligations (for example, a hypothetical law mandating the use of certain billing codes, on pain of civil penalties) with privately created content (like the *UB-04 Manual*, Form, and codes) that by itself imposes no legal obligations and that a law might direct parties to consult.  In any event, "instead of examining whether given material carries 'the force of law,'" courts applying the Copyright Act's authorship requirement exclude the work from copyright protection only when "the *author* of the work is a judge or a legislator" acting in a lawmaking capacity.  *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 276 (2020) (emphasis added).  No government is the author of the *UB-04 Manual*.  The AHA is not a judge, a legislator, or any other kind of government official acting in a lawmaking capacity.

77.     As such, PRA is liable for copyright infringement under 17 U.S.C. § 106.

78.     The AHA has suffered and, on information and belief, will continue to suffer, substantial damage to its business and goodwill, as well as losses in an amount not yet ascertained, but which will be determined according to proof.  In addition to the AHA's actual damages, the AHA is entitled to receive any profits earned by PRA from its wrongful acts or, alternatively, at the AHA's election, an award of statutory damages up to the maximum amounts as may be proper under 17 U.S.C. § 504, including up to $150,000 for willful infringement.

79. If PRA continues to infringe the AHA's copyright (including by making unauthorized copies of the *UB-04 Manual*), then the AHA will be entitled to additional damages in amounts to be proven at trial or, at its election, statutory damages up to the maximum amounts as may be proper under 17 U.S.C. § 504, including up to $150,000 for willful infringement.

80. This Court also has authority to "prevent * * * infringement of a copyright" by temporarily and permanently enjoining PRA from displaying, distributing, or otherwise facilitating access to the *UB-04 Manual*. 17 U.S.C. § 502(a). Because PRA's conduct has caused and, on information and belief, will continue to cause irreparable injury to the AHA unless enjoined by this Court, the AHA has no adequate remedy at law. The AHA is therefore entitled to injunctive relief pursuant to 17 U.S.C. § 502.

81. The factors set forth in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), support an award of attorneys' fees to the AHA as the prevailing party in this litigation under 17 U.S.C. § 505. In particular, PRA's position is objectively baseless, improperly motivated, and unreasonable, and an award in this case would advance considerations of compensation and deterrence.

## COUNT II
## BREACH OF CONTRACT (CONFIDENTIALITY PROVISIONS)

82. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

83. The AHA offers the *UB-04 Manual* for purchase on condition that the purchaser agrees to the license agreement.

84. PRA admits that it "purchased access" to the *UB-04 Manual*. Ex. 4, at 1.

85.     PRA could not purchase the *UB-04 Manual* without navigating through the website's purchase process, which requires all purchasers to accept the terms of the license agreement, or entering a licensee-specific license agreement.

86.     Clicking an "agree" button after being presented with a conspicuous display of the license agreement's terms objectively manifests the purchaser's intent to be bound by the license agreement.

87.     In exchange for accepting the terms of the license agreement, PRA received access to the *UB-04 Manual*.

88.     Under the license agreement, the "Licensor" is "Health Forum, LLC, an American Hospital Association company," plus "its successors and assigns."  Ex. 3, at 1.

89.     Under the license agreement, "Content" encompasses "the products, data and other material" within the *UB-04 Manual* that PRA purchased.  Ex. 3, § 1.

90.     When accepting the license agreement's terms, PRA agreed that it "may not share, broadcast, distribute, sell, lease, loan, transfer, reverse engineer, disassemble, modify, create derivative works of or translate the Content and may not use the Content in any service bureau or other commercial activity for use by third parties," and "may not copy the Content, except for making one copy for back-up or archival purposes."  Ex. 3, § 1.

91.     When accepting the license agreement's terms, PRA also "agree[d] to keep the Content confidential, disclose the Content only to those of Your employees that have a need to know such information, and shall not disclose the Content to any third party or allow any third party to have access to the Content."  Ex. 3, § 4.

92.     PRA's threat to "make the *Manual* freely available online to the public at large," if carried out, would violate Sections 1 and 4 of the license agreement.  Ex. 4, at 1.

93. PRA's actual and/or threatened breach of Sections 1 and 4 has damaged and will continue to damage the AHA's ability to sell the *UB-04 Manual*, to license the underlying content, to enforce its intellectual-property rights against other potential infringers, and thus to be compensated for the costs of production, which includes expenses for creative authors and support staff who refine and update the *UB-04 Manual*. This harm would occur immediately and become irreparable upon publication online because PRA would not be able to control downloaded copies of the *UB-04 Manual*.

94. The AHA has no adequate remedy at law for the wrongful acts in connection with breach of the license agreement.

95. The AHA has sustained injury, damage, and loss based on defendants' breach of the license agreement.

## COUNT III
## ANTICIPATORY BREACH OF CONTRACT (NO-CONTEST PROVISION)

96. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this complaint.

97. The AHA offers the *UB-04 Manual* for purchase on condition that the purchaser agreed to the license agreement.

98. PRA admits that it "purchased access" to the *UB-04 Manual*. Ex. 4, at 1.

99. PRA could not purchase the *UB-04 Manual* without navigating through the website's purchase process, which requires all purchasers to accept the terms of the license agreement, or entering a licensee-specific license agreement.

100. Clicking an "agree" button after being presented with a conspicuous display of the license agreement's terms objectively manifests the purchaser's intent to be bound by the license agreement.

101.    In exchange for accepting the terms of the license agreement, PRA received access to the *UB-04 Manual*.

102.    Under the license agreement, the "Licensor" is "Health Forum, LLC, an American Hospital Association company," plus "its successors and assigns." Ex. 3, at 1.

103.    When accepting the license agreement's terms, PRA "acknowledge[d] and agree[d] that all Content is the proprietary and confidential information of Licensor and its licensors, and that Licensor and its licensors own all copyrights, trademarks, patents, trade secrets and other proprietary rights in and to the Content." Ex. 3, § 4.

104.    When accepting the license agreement, PRA also "agree[d] that [it] will not challenge Licensor's and its licensors' proprietary rights in and ownership of the Content." Ex. 3, § 4.

105.    This no-contest provision is enforceable, at a minimum, in the context of a copyright license agreement. *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1199-1201 (7th Cir. 1987).

106.    PRA's November 13, 2025, letter makes clear, however, that it does intend to challenge the AHA's proprietary rights in the *UB-04 Manual*, including its copyrights, and threatens to commence litigation unless the AHA promptly forswears enforcement of its legal rights.

107.    Any attempt by PRA to challenge the copyright protection for the *UB-04 Manual* in litigation, which it has threatened to do, would violate Section 4 of the license agreement.

108.    Any attempt by PRA to file an action elsewhere seeking a declaration that the *UB-04 Manual* lacks copyright protection would also violate Section 4 of the license agreement.

109.    PRA's threatened, imminent conduct would cause injury, damage, and loss to the AHA.  For example, any attempts to contest the *UB-04 Manual*'s copyright protection would force the AHA to incur legal fees and other costs—the very harm that Section 4 was designed to prevent.

110.    The AHA has no adequate remedy at law for the wrongful acts in connection with PRA's breach of the license agreement.

## PRAYER FOR RELIEF

Plaintiffs respectfully ask for entry of judgment in their favor and against Defendant, along with appropriate relief including (but not limited to) the following:

A.    an award of any profits earned by Defendant and any actual damages suffered by Plaintiffs in such amount as may be found for any copyright infringement; alternatively, at the AHA's election, for maximum statutory damages; or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c);

B.    an award of damages for any breach of the license agreement;

C.    an injunction permanently enjoining Defendant, its officers, agents, servants, employees, and attorneys, and all those in active concert with it or participation with it, from publishing to third parties all or part of any copyrighted version of the *UB-04 Manual*;

D.    a declaration that Defendant's publication of the *UB-04 Manual* to third parties would violate the Copyright Act;

E.    a declaration that Defendant's publication of the *UB-04 Manual* to third parties would violate the license agreement;

F.    a declaration that any attempt by Defendant to challenge the *UB-04 Manual*'s copyright protection would violate the license agreement;

G.    an award of Plaintiffs' reasonable attorneys' fees, costs of suit, and interest; and

H.    any other and further relief as the Court may deem just and proper.

Dated:  December 12, 2025   Respectfully submitted,

            */s/ Elizabeth P. Papez*

Jonathan C. Bond (*pro hac vice* forthcoming)
Elizabeth P. Papez
Howard S. Hogan (*pro hac vice* forthcoming)
Heather Skrabak (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
Phone: (202) 955-8500
JBond@gibsondunn.com
EPapez@gibsondunn.com
HHogan@gibsondunn.com
HSkrabak@gibsondunn.com

Patrick J. Fuster (*pro hac vice* forthcoming)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071
Phone: (213) 229-7000
PFuster@gibsondunn.com

*Counsel for Plaintiffs American Hospital Association and Health Forum LLC*