**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN HOSPITAL ASSOCIATION and HEALTH FORUM LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>PATIENTRIGHTSADVOCATE.ORG, INC.<br>*Defendant.* | Case No. 1:25-cv-15137<br><br>Hon. Martha Pacold |

**DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Jeffrey M. Harris*
Cameron T. Norris
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*admitted pro hac vice*

*Counsel for Defendant*

**TABLE OF CONTENTS**

Introduction .................................................................................................................................1

Background...................................................................................................................................2

    A.    The NUBC develops uniform billing standards for healthcare transactions.................2

    B.    Federal and state law incorporate the NUBC's *Manual*, which the NUBC develops while exercising delegated lawmaking authority. .............................................4

    C.    AHA keeps the *Manual* behind an expensive paywall run by its for-profit subsidiary. ...........................................................................................................................7

    D.    AHA files suit to prevent the public from accessing the *Manual*. ...............................8

Legal Standard.............................................................................................................................9

Argument ...................................................................................................................................10

I.    AHA's copyrights in the *Manual* are invalid. ...................................................................10

    A.    The NUBC produces the *Manual* in a lawmaking capacity............................................10

    B.    The *Manual* is a work of the United States government. .................................................11

    C.    The *Manual* is not copyrightable because it is incorporated into law............................15

II.    Even if AHA's copyrights are valid, disclosing the *Manual* to the public is fair use. ...............19

III.    The license agreement cannot extinguish the public's right to access the *Manual*....................24

    A.    The license agreement is void under federal law................................................................24

    B.    The license agreement is void under Illinois law................................................................27

    C.    The license agreement is largely inapplicable by its terms. ............................................28

IV.    At minimum, Count III must be dismissed..................................................................................29

Conclusion .................................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*AHA v. Azar,*
  983 F.3d 528 (D.C. Cir. 2020)................................................................................8

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.,*
  929 F.3d 865 (7th Cir. 2019) ................................................................................30

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
  486 U.S. 492 (1988)..............................................................................................13

*Am. Soc'y of Cataract & Refractive Surgery v. Thompson,*
  279 F.3d 447 (7th Cir. 2002) ................................................................................18

*Andy Warhol Found. for the Visual Arts v. Goldsmith,*
  598 U.S. 508 (2023)..............................................................................................20

*Artistic Entm't v. City of Warner Robins,*
  331 F.3d 1196 (11th Cir. 2003) ............................................................................15

*Assessment Techs. of Wis. v. WIREdata (WIREdata I),*
  350 F.3d 640 (7th Cir. 2003) .......................................................................... 24, 25

*Assessment Techs. of Wis. v. WIREdata, Inc. (WIREdata II),*
  361 F.3d 434 (7th Cir. 2004) ................................................................................24

*ASTM v. Public.Resource.Org, Inc. (ASTM I),*
  896 F.3d 437 (D.C. Cir. 2018).......................................................................... 17, 24

*ASTM v. Public.Resource.Org, Inc. (ASTM II),*
  82 F.4th 1262 (D.C. Cir. 2023) .........................................19, 20, 21, 22, 23, 24

*ASTM v. UpCodes, Inc. (ASTM III),*
  752 F. Supp. 3d 480 (E.D. Pa. 2024) .............................................................. 17, 19

*Bank of Am. v. WS Mgmt., Inc.,*
   33 N.E.3d 696 (Ill. App. Ct. 2015)......................................................................30

*Banks v. Manchester,*
  128 U.S. 244 (1888)..............................................................................................18

*Banks v. Manchester,*
  23 F. 143 (C.C.S.D. Ohio 1885) ..................................................................... 18, 27

*Bd. of Regents v. Roth,*
  408 U.S. 564 (1972)..............................................................................................18

*Bd. of Trs. of Bakery Drivers Loc. 550 v. Pension Benefit Guar. Corp.,*
  136 F.4th 26 (2d Cir. 2025)..................................................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................9

*Billings Clinic v. Azar,*
  901 F.3d 301 (D.C. Cir. 2018)................................................................................8

*BOCA v. Code Tech., Inc.*,
  628 F.2d 730 (1st Cir. 1980) ............................................................... 15, 16, 18, 27

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) .......................................................................... 9

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007) ......................................................................... 13

*Canadian Standards Ass'n v. P.S. Knight Co.*,
  112 F.4th 298 (5th Cir. 2024) ..................................................................... 15, 16

*CCC Info. Servs. v. Maclean Hunter Mkt. Reps.*,
  44 F.3d 61 (2d Cir. 1994) ............................................................................. 19

*Chi. Bd. of Ed. v. Substance, Inc.*,
  354 F.3d 624 (7th Cir. 2003) ......................................................................... 21

*Corner Post, Inc. v. Fed. Rsrv.*,
  603 U.S. 799 (2024) ....................................................................................... 17

*Design Basics, LLC v. Signature Constr.*,
  994 F.3d 879 (7th Cir. 2021) ......................................................................... 17

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ....................................................................................... 19

*Erickson v. Trinity Theatre, Inc.*,
  13 F.3d 1061 (7th Cir. 1994) ......................................................................... 12

*Erlinger v. United States*,
  602 U.S. 821 (2024) ....................................................................................... 17

*Facility Guidelines Inst. v. UpCodes, Inc.*,
  677 F. Supp. 3d 955 (E.D. Mo. 2023) ......................................................... 19

*Fraternal Ord. of Police, Chicago Lodge No. 7 v. City of Chicago*,
  59 N.E.3d 96 (Ill. App. Ct. 2016) ................................................................ 28

*Free Speech Coal. v. Paxton*,
  606 U.S. 461 (2025) ....................................................................................... 19

*Galvin v. Ill. Republican Party*,
  130 F. Supp. 3d 1187 (N.D. Ill. 2015) ......................................................... 10

*Georgia v. Public.Resource.Org*,
  590 U.S. 255 (2020) ....................................... 2, 10, 11, 15, 16, 18, 19, 26, 27

*Gociman v. Loyola Univ. of Chi.*,
  41 F.4th 873 (7th Cir. 2022) ........................................................................... 9

*Google v. Oracle Am.*,
  593 U.S. 1 (2021) .......................................................... 19, 20, 21, 22, 23, 24

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ............................................................................ 16, 24, 29

*Herbert v. United States*,
36 Fed. Cl. 299 (1996) ........................................................................................ 13, 14

*Holmes v. Marion Cnty. Sheriff's Off.*,
141 F.4th 818 (7th Cir. 2025) .............................................................................. 9, 10

*Hoopla Sports & Ent. v. Nike*,
947 F. Supp. 347 (N.D. Ill. 1996) .............................................................................9

*InfinaQuest, LLC v. DirectBuy, Inc.*,
18 F. Supp. 3d 959 (N.D. Ind. 2014) ......................................................................15

*Int'l Code Council v. UpCodes, Inc.*,
2020 WL 2750636 (S.D.N.Y. May 27, 2020) .........................................................19

*Int'l Fed'n of Pro. & Tech. Eng'rs, Loc. 153 v. Chicago Park Dist.*,
812 N.E.2d 407 (Ill. App. Ct. 2004) .......................................................................30

*Jam v. Int'l Fin. Corp.*,
586 U.S. 199 (2019)................................................................................................15

*Janky v. Lake Cnty. Convention & Visitors Bureau*,
576 F.3d 356 (7th Cir. 2009) .................................................................9, 12, 13, 14

*JCW Invs., Inc. v. Novelty, Inc.*,
482 F.3d 910 (7th Cir. 2007) ..................................................................................25

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)................................................................................................17

*Kahler v. Kansas*,
589 U.S. 271 (2020) ...............................................................................................17

*Lasercomb Am., Inc. v. Reynolds*,
911 F.2d 970 (4th Cir. 1990) ............................................................................ 24, 25

*Lear, Inc. v. Adkins*,
395 U.S. 653 (1969)......................................................................................... 25, 26

*Nash v. Lathrop*,
6 N.E. 559 (Mass. 1886).................................................................................... 18, 27

*NFPA v. UpCodes, Inc.*,
2021 WL 4913276 (C.D. Cal. Aug. 9, 2021) ...................................................... 19, 21

*O'Hara v. Ahlgren, Blumenfeld & Kempster*,
537 N.E.2d 730 (Ill. 1989) .....................................................................................27

*People v. Molnar*,
857 N.E.2d 209 (Ill. 2006) .....................................................................................27

*Prac. Mgmt. Info. Corp. v. AMA*,
121 F.3d 516 (9th Cir. 1997) ..................................................................................19

*RE/MAX R.E. Pros., Inc. v. Armstrong*,
680 N.E.2d 520 (Ill. App. Ct. 1997) .................................................................. 29, 30

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.,*
816 F.2d 1191 (7th Cir. 1987) ........................................................................................26

*Signapori v. Jagaria,*
84 N.E.3d 369 (Ill. App. Ct. 2017) ...............................................................................27

*United States v. Davis,*
588 U.S. 445 (2019)............................................................................................... 17, 27

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.,*
293 F.3d 791 (5th Cir. 2002) ...........................................................16, 17, 22, 23, 25

*Vidal v. Elster,*
602 U.S. 286 (2024).........................................................................................................19

*Weinstein v. Univ. of Ill.,*
811 F.2d 1091 (7th Cir. 1987) ............................................................................... 12, 14

*Zuniga v. MLB,*
196 N.E.3d 12 (Ill. App. Ct. 2021) ................................................................................29

## Statutes and Rules

10-144 Me. Code R. Ch.101, Ch.II, §103.09 ........................................................................6

11 N.C. Admin. Code §12.1502 ...............................................................................................6

13 Mo. Code Regs. §70-3.100 ..................................................................................................6

17 U.S.C. §102..........................................................................................................................10

17 U.S.C. §105.............................................................................................................11, 14, 27

17 U.S.C. §107................................................................................................. 20, 21, 25, 29

17 U.S.C. §410..........................................................................................................................25

19 Del. Admin. Code §1341-4.0...............................................................................................6

28 Tex. Admin. Code §133.10 ..................................................................................................6

40 La. Admin. Code Pt. I, §§306-307 .....................................................................................6

42 U.S.C. §1320d ......................................................................................................................4

42 U.S.C. §1320d-2....................................................................................................................4

42 U.S.C. §1320d-4.............................................................................................................. 4, 18

42 U.S.C. §1320d-5.............................................................................................................. 4, 18

45 C.F.R. §162.1000 ............................................................................................................ 4, 18

45 C.F.R. §162.103 .............................................................................................................. 5, 11

45 C.F.R. §162.1102 ..................................................................................................................4

45 C.F.R. §162.1602 ..................................................................................................................5

45 C.F.R. §162.1802 ..................................................................................................................5

45 C.F.R. §162.402 ............................................................................................................ 4, 18

45 C.F.R. §162.910 ............................................................................................................ 5, 11

45 C.F.R. §162.923 ................................................................................................................. 4

45 C.F.R. §424.32 ................................................................................................................... 6

48 Fed. Reg. 16,750 (1983) .................................................................................................... 3

5 Ill. Stat. 140/1 §1 .............................................................................................................28

50 Ill. Admin. Code §2908.5 ................................................................................................. 6

7 Alaska Admin. Code §150.250 ........................................................................................... 6

7 Alaska Admin. Code §27.660 ............................................................................................. 6

8 Cal. Code Regs §9792.5.2 ................................................................................................... 6

84 Fed. Reg. 61,142 (2019) ..................................................................................................13

89 Fed. Reg. 93,912 (2024) ..................................................................................................13

90 Fed. Reg. 53,448 (2025) .............................................................................................. 8, 13

902 Ky. Admin. Regs. §19:010 ............................................................................................. 6

90-351 Me. Code R. Ch.5, §4.01 .......................................................................................... 6

*Announcement of Designated Standard Maintenance Organizations*, 65 Fed. Reg. 50,373 (2000)...................3, 5

Ark. Admin. Code §016.06.19-242.300 ................................................................................ 6

Ark. Admin. Code §016.25.5-363.000 .................................................................................. 6

*Centers for Medicare & Medicaid Services*, 66 Fed. Reg. 35,437 (2001) ................................................3

Colo. Rev. Stat. §10-16-106.3 ............................................................................................... 6

Fla. Admin Code §69L-7.501 ................................................................................................ 6

Fla. Admin. Code §69L-7.100 ............................................................................................... 6

Fla. Admin. Code §69L-8.072 ............................................................................................... 6

Fla. Admin. Code §69L-8.074 ............................................................................................... 6

Ind. Code §5-10-8.1-8 ........................................................................................................... 6

Iowa Admin. Code §441-80.2(249A) .................................................................................... 6

Md. Code Regs. §10.09.96.09 ............................................................................................... 6

Mich Admin. Code §418.10107 ............................................................................................ 6

Mich. Admin. Code §418.10921 ........................................................................................... 6

Mich. Admin. Code §418.10925 ........................................................................................... 6

Minn. R. 5221.0405 ............................................................................................................... 6

Minn. R. 5221.0405(E) .......................................................................................................... 6

N.D. Admin. Code §92-01-02-45.1 ...........................................................................................6

N.H. Code R. Ins. §4202.03 .....................................................................................................6

N.H. Code R. Ins. Pt. 4202, App. I .........................................................................................6

N.H. Code. R. He-C §1503.03 ..................................................................................................7

N.H. Code. R. He-C Ch.1500, App. I ......................................................................................7

N.J. Admin. Code §8:31B-2.1 ...................................................................................................7

Nev. Admin. Code §686A.288 ..................................................................................................6

Ohio Admin. Code §3901-8-03 .................................................................................................6

Or. Admin. R. 436-009-0004 .....................................................................................................7

*Price Transparency Requirements for Hospitals to Make Standard Charges Public*, 84 Fed. Reg. 65,524 (2019) 8

S.C. Code §38-71-230 ................................................................................................................6

S.D. Admin. R. 67:16:03:14 ......................................................................................................6

*Standards for Electronic Transactions*, 63 Fed. Reg. 25,272 (1998) ............................................. 5, 11

*Standards for Electronic Transactions*, 65 Fed. Reg. 50,312 (2000) .............................................4, 5

Tenn. Comp. R. & Regs. §1200-07-04-.04 ..............................................................................6

Wash. Admin. Code §246-455-020 ...........................................................................................6

**Other Authorities**

Blackstone, *Commentaries on the Laws of England* (1765) ..........................................................18

CMS, *Justification for Estimates for Appropriations Committee* (Fiscal Year 2026), perma.cc/2DS4-834W ..3

Cong. Budget Office, *The Prices That Commercial Health Insurers and Medicare Pay for Hospitals' and Physicians' Services* (2022), perma.cc/VDQ5-RQTW ................................................................8

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| 835 | ASC X12N 835—Health Care Claim Payment/Advice |
| 837I | ASC X12N 837—Health Care Claim: Institutional |
| AHA | American Hospital Association |
| CMS | Centers for Medicare & Medicaid Services |
| DSMO | Designated Standards Maintenance Organization |
| HHS | Department of Health and Human Services |
| HIPAA | Health Insurance Portability and Accountability Act |
| *Manual* | *UB-04 Data Specifications Manual* |
| NAMD | National Association of Medicaid Directors |
| NUBC | National Uniform Billing Committee |
| PRA | PatientRightsAdvocate.Org |

**INTRODUCTION**

PatientRightsAdvocate.Org (PRA) is a 501(c)(3) nonprofit organization whose core mission is to bring transparency and accountability to the healthcare system to promote a functional, competitive healthcare marketplace. This dispute arises out of PRA's efforts to ensure open public access to a critical reference manual that specifies the procedures for billions of dollars of healthcare billing.

The *UB-04 Data Specifications Manual* plays a critical role in healthcare billing and pricing. Federal law requires hospitals and insurers to use the *Manual* to classify treatments in nearly every healthcare transaction involving hospitals. And federal law and most States require use of the *Manual* when submitting claims for reimbursement under Medicare and other government programs. Indeed, Medicare directly incorporates the *Manual*'s classifications into its reimbursement formula, which in turn influences the rates that private insurers pay. Public access to the *Manual* is thus essential to allow patients, employers, policymakers, regulators, and researchers to understand billing and reimbursement procedures for the ever-growing share of the economy that is spent on healthcare.

At present, however, the public cannot see the *Manual* or openly discuss its content. The American Hospital Association (AHA), a trade association for the very institutions the *Manual* is used to pay, claims the *Manual* as its private property. The only way to see the *Manual* is to purchase an expensive annual license from AHA's for-profit subsidiary (Health Forum LLC). The license purports to require purchasers to keep the *Manual*'s contents confidential—even within their own organizations. A purchaser is not even allowed to print out more than 20 pages for its own authorized use.

Properly understood, however, the *Manual* is not AHA's private creation that it can lawfully hide from the public and license out at whatever exorbitant price the market will bear. A committee of federal agencies, state governments, and private actors jointly authors the *Manual*, and works of the government cannot be copyrighted. Nor does the committee author the *Manual* as a mere nonbinding collection of best practices. To the contrary, the *Manual* is part of federal electronic-billing regulations. The committee drafts and revises the *Manual* under an express delegation of the Secretary of Health

1

and Human Services' rulemaking authority and subject to his supervision. The *Manual* is also part of Medicare regulations and the law of at least 30 States. Indeed, the regulations of at least six States expressly incorporate the *Manual* by reference, making the *Manual* part of the text of state law, which "no one can own." *Georgia v. Public.Resource.Org*, 590 U.S. 255, 265 (2020).

Incredibly, AHA claims that none of these considerations matters. Regardless of whether the public has a general right to access the *Manual*, AHA asserts it can extinguish that right through form contracts by requiring every purchaser to agree to accept the validity of its asserted copyright and to keep the *Manual* confidential. This gambit does not work. Neither copyright law nor state contract law will tolerate an attempt to conceal the law from the people. And, regardless, the only contract AHA alleges to exist between its for-profit subsidiary and PRA is limited to the 2026 edition of the *Manual*; PRA has not purchased any license or made any representations about any past or future editions.

PRA thus moves to dismiss AHA's complaint with prejudice for failure to state a claim. AHA has not plausibly alleged copyright infringement or breach of contract. This Court should dismiss the complaint and hold that PRA has the right to provide open public access to the *Manual*.

## BACKGROUND
### A. The NUBC develops uniform billing standards for healthcare transactions.

The National Uniform Billing Committee (NUBC) is an unincorporated association established in 1975 "to develop and maintain a national uniform billing instrument for use by the institutional health care community." NUBC Protocol (Ex.A) at 3; *see* Compl. (Doc.1) ¶28. In 1982, the NUBC adopted its first standard billing form, the UB-82. ¶31; NUBC Protocol 3. Its current standard billing form is the UB-04. Compl. ¶23.

The federal government is part of the NUBC. Twenty-two organizations, meant to represent "a balance of national payer and provider organizations," as well as other groups, are the NUBC's voting members. NUBC Protocol 4. Federal agencies have been members of the NUBC from its

2

earliest days. *See* 48 Fed. Reg. 16,750, 16,752 (1983) (listing the Health Care Financing Administration[1] and the Civilian Health and Medical Program of the Uniformed Services as NUBC members). The UB-82 was a "joint effort by" these agencies, AHA, and others. *Id.* Today, four NUBC members are agencies of the federal government: the Centers for Medicare & Medicaid Services (CMS) (counting as two members, one for Medicare and one for Medicaid), the Defense Health Agency (DHA), and the National Center for Health Statistics. NUBC Protocol 4-5. With an annual budget of $1.75 trillion, CMS is by far the largest individual payer represented on the NUBC. *See* CMS, *Justification for Estimates for Appropriations Committees* 15 (Fiscal Year 2026), perma.cc/2DS4-834W.

In addition, two members—the National Uniform Claims Committee and Accredited Standards Committee X12—are organizations designated by the federal government to maintain federally mandated electronic billing standards. NUBC Protocol 4; *see Announcement of Designated Standard Maintenance Organizations*, 65 Fed. Reg. 50,373 (2000). And two members represent state governments—the National Association of Medicaid Directors (NAMD) and National Association of Health Data Organizations. NUBC Protocol 4-5; Compl. ¶30. Between CMS, DHA, and NAMD, government entities constitute a majority of the voting membership of the payer side of the provider/payer divide. *See* NUBC Protocol 4.

AHA is also a member of the NUBC. NUBC Protocol 4, 7; Compl. ¶29. Like all members, it has one vote in NUBC decisionmaking. NUBC Protocol 10; *see* Compl. ¶36. AHA is not a charity. It is a 501(c)(6) trade association advocating for the interests of the hospital industry, which comprises both non-profit and for-profit entities. Compl. ¶20; AHA Form 990 (Ex.B) at 1. AHA lobbies heavily on behalf of the industry, reporting over $22 million in lobbying and political expenditures in 2022. AHA Form 990, Sched. C at 3. Nor is AHA a neutral entity on the NUBC; it is one of eight

---

[1] The predecessor agency to the Centers for Medicare & Medicaid Services. *See Centers for Medicare & Medicaid Services*, 66 Fed. Reg. 35,437 (2001).

3

representatives of the provider side of the provider/payer divide. NUBC Protocol 7. In addition to being a voting member, AHA serves as the NUBC's Secretariat. Compl. ¶29. In that capacity, it performs "administrative functions" needed "to support the activities of the NUBC." NUBC Protocol 7.

### B. Federal and state law incorporate the NUBC's *Manual*, which the NUBC develops while exercising delegated lawmaking authority.

Federal law mandates the use of the NUBC's handiwork. In 1996, Congress enacted the Health Insurance Portability and Accountability Act (HIPAA), which directs the Secretary of HHS to "adopt standards" for electronic healthcare transactions. 42 U.S.C. §1320d-2(a)(1). A standard must enumerate a list of "data elements." §1320d-2(a)(1), (a)(4)(A)(iv). Each element is a category of information needed to process a healthcare claim, such as the patient's condition, the services provided to the patient, and the type of facility in which treatment was provided. Compl. ¶¶25-26. A standard must also identify code sets to be used to communicate data elements. §§1320d(1), 1320d-2(c)(1); 45 C.F.R. §162.1000(b); *see* Compl. ¶26. A standard, for example, might require a provider to identify the type of facility where a procedure was performed (the data element) using a number (the code), with different numbers representing a hospital, a nursing home, or home care. Nearly all healthcare providers and payers that use electronic billing are required to follow the Secretary's standards, 42 U.S.C. §1320d-4; 45 C.F.R. § 162.923(a); Compl. ¶40, including using the code sets that the standards require, 45 C.F.R. §162.1000(b). Violations of the Secretary's standards are punishable by civil penalties of up to $50,000 per violation. 42 U.S.C. §1320d-5; 45 C.F.R. §160.402(a) .

Following HIPAA's enactment, HHS adopted standards expressly incorporating the NUBC's billing codes. In 2000, HHS adopted "ASC X12N 837—Health Care Claim: Institutional" (837I) as the mandatory electronic-billing standard for claims by institutional providers, *Standards for Electronic Transactions*, 65 Fed. Reg. 50,312, 50,370 (2000); 45 C.F.R. §162.1102(a)(4) , (b)(1), (b)(2)(iv), (c), and for coordination of benefits among health plans that cover the same patient, 65 Fed. Reg. at 50,372;

45 C.F.R. §162.1802(a)(4) , (b)(1), (b)(2)(iv), (c). "837I" in turn "require[s] codes maintained by the NUBC" and presently set forth in "the NUBC Official UB-04 Data Specifications Manual." CMS, Pub. No. MLN006926, *Medicare Billing: CMS-1450 & 837I* at 7 (2025) (Ex.C); *accord* CMS, Pub. No. 100-04, *Medicare Claims Processing Manual* ch. 25, §75 (2023) (Ex.D). In addition, HHS adopted "ASC X12N 835—Health Care Claim Payment/Advice" (835) as the mandatory standard for electronic billing communications from insurers to healthcare providers. 65 Fed. Reg. at 50,371; 45 C.F.R. §162.1602(a)-(c), (d)(1)(ii), (d)(2). This standard, too, requires use of the NUBC's codes. *See Standards for Electronic Transactions*, 63 Fed. Reg. 25,272, 25,315-16 (1998) (listing "National Uniform Billing Committee Revenue Code" as one of 835's required "data elements").

The same day HHS adopted the 837I and 835 standards, HHS gave the NUBC an official role in revising them. With the NUBC's consent, HHS named the NUBC a "designated standard maintenance organization" (DSMO). 65 Fed. Reg. at 50,373. As a DSMO, it is the NUBC's responsibility to "[m]aintain standards adopted under." HIPAA, 45 C.F.R. §162.910(a)(1)(i). This includes making "enhancements" and "expansion[s] of [a standard's] code set." §162.103 (definition of "maintain"). In other words, HHS did not merely adopt standards that incorporated an existing set of codes created by the NUBC. It gave the NUBC explicit authority to amend the codes that the standards require on an ongoing, prospective basis.

With this authority comes supervision. The NUBC must perform its delegated responsibilities to the HHS Secretary's "satisfaction" and "in accordance with the processes the Secretary may require." §162.910(a)(1), (b). For instance, HHS requires DSMOs to create an appeals process for when it rejects requests to alter an existing standard. §162.910(c)(3). The NUBC accordingly allows non-members to request revisions to its code sets and to appeal the denial of requests. NUBC Protocol 12-13.

5

After being named a DSMO in 2000, the NUBC "overhauled" its existing codes, publishing the first edition of the *Manual* in 2006. Compl. ¶34. The *Manual* provides "instructions" for and "explanations" of the NUBC's codes. ¶42. As AHA acknowledges, the *Manual* is "necessary to understand" how to use those codes. ¶42. The *Manual* also includes "additional instructions" on using the codes "in the electronic transaction standard." NUBC Protocol 7. The *Manual* thus spells out the legal obligations of entities involved in electronic billing by institutional healthcare providers. The NUBC issues a new edition of the *Manual* every year, incorporating changes to the codes and specifications for using them. ¶41.

Federal and state law incorporate the NUBC's codes and the *Manual* in many other contexts beyond HHS's HIPAA regulations. Federal regulations require healthcare providers to submit claims for Medicare reimbursement on the UB-04 Form created by the NUBC. 45 C.F.R. §424.32(b); *Medicare Claims Processing Manual* ch. 25, §70.1. Completing the form is only possible with the *Manual*. ¶42. At least 30 States likewise require use of the UB-04 Form and NUBC codes for reimbursement claims and other purposes.[2] Minnesota regulations "incorporate by reference … The UB-04 Data Specifications Manual (UB-04 Manual), 2016, and any subsequent revisions adopted by the National Uniform Billing Committee"—thereby making the current edition of the *Manual* part of the text of state law. Minn. R. 5221.0405(E). At least five other States likewise expressly incorporate the *Manual* by reference into their regulations.[3]

---

[2] Ark. Admin. Code §§016.25.5-363.000, 016.06.19-242.300; 8 Cal. Code Regs §9792.5.2; Colo. Rev. Stat. §10-16-106.3; 19 Del. Admin. Code §1341-4.0; 50 Ill. Admin. Code §2908.50(h); Ind. Code §5-10-8.1-8(2); Iowa Admin. Code §441-80.2(249A); 902 Ky. Admin. Regs. §19:010; 40 La. Admin. Code Pt. I, §§306-307; 10-144 Me. Code R. Ch.101, Ch.II, §103.09; 90-351 Me. Code R. Ch.5, §4.01; Md. Code Regs. §10.09.96.09(B)(1); 13 Mo. Code Regs. §70-3.100(1); Nev. Admin. Code §686A.288; 11 N.C. Admin. Code §12.1502(a); N.D. Admin. Code §92-01-02-45.1(4); Ohio Admin. Code §3901-8-03(E)(1); S.C. Code §38-71-230(B); S.D. Admin. R. 67:16:03:14; Tenn. Comp. R. & Regs. §1200-07-04-.04; 28 Tex. Admin. Code §133.10; Wash. Admin. Code §246-455-020(2); *infra* this page & n.3.

[3] *See* 7 Alaska Admin. Code §§27.660(b), 150.250(a)(8); Fla. Admin. Code §§69L-7.100(3), 69L-7.501(3), 69L-8.072(1)(j), 69L-8.074(1)(j); Mich. Admin. Code §§418.10107(h), 418.10921(1), 418.10925; Minn. R. 5221.0405(E); N.H. Code R. Ins. §4202.03(a); N.H. Code R. Ins Pt. 4202, App. I; N.H. Code. R. He-C

**C. AHA keeps the *Manual* behind an expensive paywall run by its for-profit subsidiary.**

Although the *Manual* is prepared by a 22-member committee exercising delegated governmental power and is incorporated into both federal and state law, AHA jealously restricts access to it. AHA claims a copyright in every edition of the *Manual* from 2006 to present. Compl. ¶43; Doc.1-1. It purports to hold these copyrights "on behalf of the NUBC" in its capacity as the NUBC's secretariat. NUBC Protocol 14; *see also id.* at 7.

The only way to obtain access to the *Manual* is to purchase an ebook license from AHA's for-profit subsidiary Health Forum LLC. Compl. ¶¶12-13, 44; AHA Form 990, Sched. R at 2. Entities must pay by the user, with a license costing $182 for one user and $4,523 for 33-50 users, with licenses for more than 50 users negotiated on an individualized basis. Compl. ¶44. Regardless of when the purchaser obtains a license, the license expires each year on June 30, and the purchaser must buy a new license if it wishes to retain access to the *Manual*. *Manual* Purchase Webpage (Ex.E) at 2. The license agreement states that purchasers must agree not to disclose the content they have purchased, Agreement (Doc.1-3) §§1, 4 (confidentiality provisions), or challenge AHA's proprietary rights in it, §4 (no-contest provision). And they may disclose the contents of the *Manual* to their own employees only on a "need to know" basis. §4. AHA even asserts that authorized users may print only 20 pages of the *Manual* at a time and only a fixed number of times. *Manual* Purchase Webpage 2.

AHA's restrictive approach to the *Manual* undermines the public's ability to understand the convoluted healthcare billing system. The NUBC's codes form part of "the basic 'plumbing' of our healthcare system" and are used, as state and federal law requires, to process billions of dollars of healthcare transactions every day. *See* Compl. ¶¶1, 40. The codes determine how healthcare interventions are classified and thus how they are billed. For instance, they are necessary to calculate Medicare-

---

§1503.03(a); N.H. Code R. He-C Ch.1500, App. I; N.J. Admin. Code §§8:31B-2.1(a), 11:22-3.3(b); Or. Admin. R. 436-009-0004(9).

reimbursement rates. Part of Medicare's reimbursement "formula" is the "cost-to-charge ratio," which "reflects the percentage of [a] hospital's charges attributable to actual costs" of "th[e] procedure" in question. *Billings Clinic v. Azar*, 901 F.3d 301, 305 (D.C. Cir. 2018). The definition of the procedure is in turn based on the "revenue code" set forth for it in "the National Uniform Billing Committee … Manual." 90 Fed. Reg. 53,448, 53,456 (2025). Without access to the *Manual*, the public cannot understand why Medicare reimburses hospitals at the rates it does. And because private insurance frequently sets rates as "a percentage of the amount paid by Medicare for that service," private billing will remain opaque without public access to the *Manual* as well. Cong. Budget Office, *The Prices That Commercial Health Insurers and Medicare Pay for Hospitals' and Physicians' Services* 3 (2022), perma.cc/VDQ5-RQTW.

The federal government recognizes this reality. In a 2019 rule requiring hospitals to publicize their standard charges for services, HHS "encourage[d]" hospitals to classify their charges by "revenue code" where possible "to improve the public's understanding" of their "charges." *Price Transparency Requirements for Hospitals to Make Standard Charges Public*, 84 Fed. Reg. 65,524, 65,559 (2019). Although AHA purports to find it "perplexing" to draw a link between the NUBC codes and price transparency, Compl. ¶57, it knows better. AHA tried, unsuccessfully, to strike down the 2019 rule's price-transparency requirements in court. *See AHA v. Azar*, 983 F.3d 528 (D.C. Cir. 2020). But having failed in that endeavor, AHA's "Updated Price Transparency Guidelines" recognize that hospitals can comply with the rule by publishing "a list of charges that contains UB-04 Revenue codes." Ex.F at 3.

### D. AHA files suit to prevent the public from accessing the *Manual*.

PRA is a 501(c)(3) nonprofit organization whose core mission is to bring transparency and accountability to the healthcare system to promote a functional, competitive healthcare marketplace. Ex.G; PRA 990 (Ex.H) at 1. To advance that mission, PRA seeks to ensure that the *Manual*—which is incorporated into state and federal law and is indispensable to an understanding of healthcare billing—is openly available to the general public. Doc.1-4 at 1. To that end, PRA sent AHA a letter

8

notifying AHA that PRA had purchased access to the 2026 edition of the *Manual*. *Id.* PRA explained that, because both federal and state law incorporate the *Manual*, it is part of the public domain and, at minimum, making it available to the public is fair use. Doc.1-4 at 2-3. PRA therefore asked AHA to confirm PRA's legal right to make the *Manual* publicly available for free online. Doc.1-4 at 3.

AHA never responded to PRA's letter. Instead, AHA and its for-profit subsidiary Health Forum LLC preemptively filed this three-count suit against PRA. Count I alleges that disclosing the *Manual* to the public would be copyright infringement. Compl. ¶¶66-81. Count II alleges that disclosing the *Manual* would breach the confidentiality provisions of Health Forum's license agreement. ¶¶82-95. And Count III alleges that the mere act of filing suit against AHA to challenge its purported copyrights in the *Manual* would violate the license agreement's no-contest provision. ¶¶96-110. Among other relief, AHA seeks damages, an injunction prohibiting PRA from making public *any* edition of the *Manual*, and a declaration that any suit by PRA challenging AHA's ownership of *any* edition of the *Manual* would be unlawful. Compl. 26.

**LEGAL STANDARD**

A complaint must be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court may consider the four corners of the complaint, "documents incorporated into the complaint by reference," documents subject to "judicial notice," *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025), and documents otherwise "integral to the complaint," *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). If "an exhibit" properly considered on "a motion to dismiss" "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

"[C]opyrightability" is "an issue of law," *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 363 (7th Cir. 2009), that the Court can resolve on a motion to dismiss, *e.g.*, *Hoopla Sports & Ent. v. Nike*, 947 F. Supp. 347, 353-55, 359 (N.D. Ill. 1996). Further, if the existence of an "affirmative

defense is clear" from the complaint and the other "sources courts ordinarily consider when deciding a Rule 12(b)(6) motion," "the court may dismiss" the complaint for failure to state a claim. *Holmes*, 141 F.4th at 822. Thus, the Court may also grant a motion to dismiss based on a fair-use defense. *E.g.*, *Galvin v. Ill. Republican Party*, 130 F. Supp. 3d 1187, 1197 (N.D. Ill. 2015).

## ARGUMENT

PRA cannot be liable for copyright infringement because the *Manual* is not copyrightable and, in any event, sharing it with the general public is fair use. Nor is PRA liable for breach of contract because the license agreement's no-contest and confidentiality provisions are void under federal and state law, and because the provisions are by their terms largely inapplicable. And even if the complaint's allegations were otherwise actionable, Count III must still be dismissed because the mere act of filing claims against AHA would not constitute breach of contract.

## I. AHA's copyrights in the *Manual* are invalid.

For three independent reasons, AHA has no valid copyright in the *Manual*. The NUBC produces the *Manual* pursuant to delegated governmental authority, the *Manual* is a work of the federal government, and the *Manual* has been incorporated into federal and state law. Count I must accordingly be dismissed.

### A. The NUBC produces the *Manual* in a lawmaking capacity.

As a Designated Standards Maintenance Organization, the NUBC exercises delegated federal authority. Because the NUBC adopts and revises the *Manual* in that capacity, the *Manual* is not copyrightable.

Because "no one can own the law," the works of government officials are not copyrightable. *Public.Resource*, 590 U.S. at 265. Copyright protects "original works of *authorship*." 17 U.S.C. §102(a) (emphasis added). Under the "government edicts doctrine, officials empowered to speak with the force of law cannot be the authors of … the works they create in the course of their official duties." *Public.Resource*, 590 U.S. at 259. So judges are not the "authors" of their opinions for purposes of

10

claiming a copyright, nor are legislators the "authors" of statutes and legislative history. *Id.* at 266. Such works fall "outside the reach of copyright protection." *Id.* at 259.

As a DSMO, the NUBC is empowered to speak with the force of law. HIPAA-covered entities must use the code sets required by the standards adopted by the Secretary. 45 C.F.R. §162.1000(b). A DSMO is authorized by HHS to alter the code sets and, in turn, the requirements imposed by the standards. §§162.103, .910(a)(1)(i). A DSMO must perform its functions, moreover, to the HHS Secretary's "satisfaction" and according to procedures approved by the Secretary. §162.910(a)(1), (b). A DSMO thus "wields the [Secretary's] authority … on [his] behalf," bringing it within the scope of the government edicts doctrine. *Public.Resource*, 590 U.S. at 268; *see id.* at 267-68 (Commission tasked by state legislature with producing annotations for the official state code falls within the government edicts doctrine).

The NUBC issues the *Manual* in the "discharge" of its delegated governmental "duties." *Id.* at 268. The 837I and 835 standards adopted by the Secretary require the use of the NUBC codes defined in the *Manual. See Medicare Billing: CMS-1450 & 837I* at 7; *Medicare Claims Processing Manual* ch. 25, §75; 63 Fed. Reg. at 25,315-16; Compl. ¶¶33, 41-42. When "the NUBC approves changes to the *UB-04 Manual*," ¶37, it is exercising its delegated DSMO authority—"enhanc[ing]" and "expan[ding]" the "code set[s]" that the 837I and 835 "standard[s]" require, 45 C.F.R. §162.103. The *Manual* accordingly falls squarely within the government edicts doctrine and "outside the reach of copyright protection." *Public.Resource*, 590 U.S. at 259.

**B. The *Manual* is a work of the United States government.**

Even apart from the government edicts doctrine, the *Manual* is not copyrightable because it is authored in part by the federal government. The NUBC's members jointly author the *Manual*. Because some of those members are federal agencies, the *Manual* is an uncopyrightable "work of the United States Government." 17 U.S.C. §105(a).

Works coauthored by the federal government are not copyrightable. "In a joint work, the joint authors hold undivided interests in a work, despite any differences in each author's contribution." *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994) (citing §201). "Each author as co-owner has the right" to "license the use of the work," meaning that one joint author cannot prevent another from making the work public. *Id.*; *accord Weinstein v. Univ. of Ill.*, 811 F.2d 1091, 1095 (7th Cir. 1987). "Copyright protection" is "not available for any work of the United States Government." §105(a). By virtue of this provision, any government work is effectively licensed to the public at large automatically. Any work coauthored by the federal government thus falls within the public domain.

To be joint authors of the *Manual*, the NUBC's members must "intend to create a joint work," *Janky*, 576 F.3d at 361, which "is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." §101. The members must also "independently" contribute expression to the *Manual. Janky*, 576 F.3d at 361. Both conditions are met here.

The NUBC's members intend to create a joint work. The *Manual* is "a single product." *Id.* at 362. It is a single item for a unitary purpose—to explain how to complete the UB-04 Form and electronic-billing transactions based on it. Compl. ¶¶41-42, 44; *Manual* Purchase Webpage 1. And the NUBC's members share "control over" its content. *Janky*, 576 F.3d at 362. Changes are made only by a majority vote of the members. Compl. ¶¶36-37; NUBC Protocol 10-11. The *Manual* is also "bill[ed]" as a work of the NUBC collectively. *Janky*, 576 F.3d at 362. The *Manual* presents itself as "adopted by the National Uniform Billing Committee." *Manual* Purchase Webpage 1. The NUBC Protocol refers to the *Manual* as "the NUBC's UB Data Specifications Manual" and as a work "developed and maintained by the NUBC." NUBC Protocol 8, 14. Likewise, CMS (an NUBC member twice over) calls the *Manual* the "NUBC [Current Year] Data Specifications Manual," and refers to the "NUBC" as the

author who "add[s] … new revenue codes" to it. 84 Fed. Reg. 61,142, 61,150 (2019); *accord, e.g.*, 90 Fed. Reg. 53,448, 53,456 (2025); 89 Fed. Reg. 93,912, 93,922 (2024).

The NUBC's members also independently contribute to the final work. By deliberating and voting, the NUBC's members actively participate in every decision to revise or not revise the *Manual.* Compl. ¶¶36-37; NUBC Protocol 10-11. "[A]ctive participation" is an "obligatio[n]" of every member; a member who does not satisfy this obligation will be removed. NUBC Protocol 6. And the participation of every member is a "significant contributio[n]" to the *Manual. Janky*, 576 F.3d at 362. Each member is selected for its "unique perspective and interest in institutional health care claims." NUBC Protocol 4. And the *Manual* is treated as authoritative because it represents "a balance" of voices from within the healthcare industry. *Id.*

If, despite the NUBC's formal structure, the *Manual* were really just the work of AHA—a trade association that represents and lobbies for the discrete interests of hospitals—a serious "antitrust" problem would arise, because "a single industry player" would have "captur[ed] the economic power of an industry-wide standard." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 312 n.5 (3d Cir. 2007); *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 501 (1988). But because "[t]he NUBC is committed to full compliance with existing antitrust laws," the most plausible inference is that its processes are not a sham, and that many members besides AHA play an important role in deciding what content goes into the *Manual*. NUBC Protocol 14.

In similar circumstances, the Court of Federal Claims held that expert members of a committee were joint authors. In *Herbert v. United States*, "a volunteer committee" of scientists convened "to develop the 10th Edition of the *Recommended Dietary Allowances*" for the National Institutes of Health. 36 Fed. Cl. 299, 302 (1996). Because the "the Committee as a whole reviewed the existing drafts" and "had complete control over the manuscript," the committee members were joint authors, even though

13

"the Committee made unilateral changes infrequently." *Id.* at 309. So too here. Because the NUBC as a whole reviews and controls every proposed change to the *Manual*, its members are joint authors.

The public record confirms that the *Manual*'s content is the product of joint authorship because members other than AHA contribute at least some of the *Manual*'s content. AHA alleges that it "frequently drafts specific language for code updates," which is another way of saying that other members sometimes (and perhaps even most of the time) draft such language. Compl. ¶36. CMS in particular has proposed specific codes that the NUBC has adopted. For example, in 2005, "CMS requested" and the NUBC adopted "a redefinition of revenue codes 0521 and 0522," as well as "the addition of revenue codes 0524, 0525, 0527, and 0528," to identify treatments provided in Rural Health Clinics and Federally Qualified Health Centers. CMS, *Change Request 4210* (Ex.I) at 2. And in 2016, "CMS … requested and NUBC approved a new Revenue Code 0815" to classify more precisely stem cell transplants. CMS, *Change Request 9674* (Ex.J) at 2. Thus, the NUBC's members—and CMS in particular—are joint authors, making the *Manual* an uncopyrightable government work.

It makes no difference that the NUBC's Protocol requires each member to recognize AHA as the sole owner of the *Manual. See* Compl. ¶30. That very requirement recognizes that the NUBC members jointly author the *Manual*: each member "relinquishes any claim to copyright ownership of … any material *developed by the NUBC*" so that AHA can "hold" ownership "*on behalf of the NUBC.*" NUBC Protocol 14 (emphases added). The requirement does not name AHA as the *Manual*'s sole author; it purports to *transfer* ownership from the *Manual*'s other coauthors to AHA (in its ministerial role as the NUBC's secretariat, *see id.* at 7). *See Janky*, 576 F.3d at 362 (emphasizing that joint authorship turns on the "intent" to create "a single product" "together," not the "intent" to share ownership under "copyright law"). But although one coauthor usually is free to transfer his ownership interest to another coauthor, §201(d)(1); *Weinstein*, 811 F.2d at 1095, the NUBC's federal-agency members cannot. The works of federal agencies are in the public domain. §105(a). Because a federal agency

14

"does not have" the right to deny the public access to its works, it cannot "give" that right to AHA. *InfinaQuest, LLC v. DirectBuy, Inc.*, 18 F. Supp. 3d 959, 965 (N.D. Ind. 2014). The transfer requirement thus does nothing except reinforce that the NUBC members are joint authors and that the *Manual* as a whole may not be copyrighted.

### C. The *Manual* is not copyrightable because it is incorporated into law.

Finally, the *Manual* is not copyrightable because it is incorporated into federal and state law. Any other conclusion would be unconstitutional.

#### 1. Works incorporated into law fall in the public domain.

As a text "incorporated by reference into" a "regulation," the *Manual* is "not protected under the Copyright Act." *Canadian Standards Ass'n v. P.S. Knight Co.*, 112 F.4th 298, 304-05 (5th Cir. 2024), *cert. denied*, 145 S.Ct. 1135 (2025). This is so for at least three reasons.

*First*, because it has been incorporated into the text of state and federal regulations, the *Manual* is an uncopyrightable work of federal and state regulators. The federal government and at least 30 States incorporate the *Manual* into law by using it to define healthcare providers' and payers' legal obligations for electronic billing and reimbursement. *Supra* Background, Part B. At least six States have explicitly incorporated the *Manual* by reference, making the *Manual* part of the very text of their regulations. *Supra* at 6 & n.3. "Incorporation by reference is a form of legislative shorthand"; its "effect … is the same as if the referenced material were set out verbatim in the referencing" provision. *Artistic Entm't v. City of Warner Robins*, 331 F.3d 1196, 1206 (11th Cir. 2003); *see also Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019) (incorporation by "refer[ence] … in effect cuts and pastes the referenced" document into "the referring" provision). As part of the text of binding regulations, the *Manual* is the "work" of government officials with "authority to make … law." *Public.Resource*, 590 U.S. at 266. A work so "incorporated" is "not protected under the Copyright Act." *Canadian Standards*, 112 F.4th at 305; *accord BOCA v. Code Tech., Inc.*, 628 F.2d 730, 734 (1st Cir. 1980).

15

Because it is incorporated into the law, the *Manual* is a work of federal and state regulators "regardless of who actually draft[ed]" its specific language. *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 799 (5th Cir. 2002) (en banc) (quoting *BOCA*, 628 F.2d at 734). "[A]n incorporated provision 'exists not as any part of the referenced material itself, but rather as a duplicate or clone of the referenced material that has been created within the adopting legislation.'" *Bd. of Trs. of Bakery Drivers Loc. 550 v. Pension Benefit Guar. Corp.*, 136 F.4th 26, 30 (2d Cir. 2025). Thus, "as *law*," the *Manual* is a distinct work in "the public domain." *Veeck*, 293 F.3d at 793. By adopting the text of the *Manual* through the rulemaking process, federal and state regulators have "consciously" made it their own. *Id.* at 799; *accord BOCA*, 628 F.2d at 734.

*Second*, even apart from the issue of authorship, the government edicts doctrine forecloses any attempt to copyright the *Manual*. The core "principle" of the government edicts doctrine is that "no one can own the law." *Public.Resource*, 590 U.S. at 265. The *Manual* has been incorporated into federal and state regulations, which are "the law" under any conceivable definition. *Canadian Standards*, 112 F.4th at 304. Thus, no one can own the *Manual*. To be sure, the government edicts doctrine does not "focus *exclusively* on whether a particular work has 'the force of law.'" *Public.Resource*, 590 U.S. at 272 (emphasis added); *see* Compl. ¶76. But that is because the doctrine *includes* "supplementary materials" that "do not have the force of law" (*e.g.*, annotations, legislative history, and court syllabi), not because it *excludes* works that undeniably do have the force of law. *Public.Resource*, 590 U.S. at 273. Since a private entity cannot claim a copyright in a government's code of regulations, the *Manual* must be in the public domain.

*Third*, the *Manual* is uncopyrightable under the merger doctrine. Copyright protects an author's "expression," not "facts or ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985). Under the merger doctrine, when an idea or fact "can be expressed in only limited ways," the author's "expression 'merges' into the idea" or fact "and cannot receive copyright protection." *Design*

16

*Basics, LLC v. Signature Constr.*, 994 F.3d 879, 889 (7th Cir. 2021). The law can be expressed only *one* way—through its "text." *Corner Post, Inc. v. Fed. Rsrv.*, 603 U.S. 799, 815 (2024). "[P]araphrases, summaries, and descriptions … do not capture the precision that is necessary to understand the legal obligations that governments impose and enforce." *ASTM v. Public.Resource.Org, Inc.* (*ASTM I*), 896 F.3d 437, 450 (D.C. Cir. 2018); *ASTM v. UpCodes* (*ASTM III*)*, Inc.*, 752 F. Supp. 3d 480, 500-01 (E.D. Pa. 2024). So it is "obvious that for copyright purposes, laws are 'facts.'" *Veeck*, 293 F.3d at 801. The merger doctrine thus requires that the *Manual* be "available to every person." *Id.*

### 2.  A contrary conclusion would be unconstitutional.

If any doubt remains, constitutional avoidance requires holding that the *Manual* is not copyrightable because it is incorporated into law. "When 'a serious doubt' is raised about the constitutionality of an Act of Congress," courts must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). Here, AHA's assertion that "copyright … persist[s] in works incorporated by reference into law" "raises a serious constitutional concern" under both the Due Process Clause and the First Amendment. *ASTM I*, 896 F.3d at 447 (applying constitutional avoidance); *accord id.* at 458-59 (Katsas, J., concurring).

**a.**  Extending copyright protection to the *Manual* would violate due process. Because the *Manual* defines critical legal obligations, it must be freely available to the general public.

Due process guarantees individuals "those procedural protections well established at common law," *Erlinger v. United States*, 602 U.S. 821, 830 (2024), as set forth in "eminent common-law authorities" like "Blackstone" and in the traditional practice of "our legal system," *Kahler v. Kansas*, 589 U.S. 271, 279 (2020). Due process includes the guarantee that the public will have "fair notice of what the law demands of them." *United States v. Davis*, 588 U.S. 445, 451 (2019).

Free publication of the law has always been an essential requirement of fair notice. Blackstone taught that "acts of parliament" are not true laws unless the public is "notified by writing, printing, or

the like … in the most public and perspicuous manner." 1 Blackstone, *Commentaries on the Laws of England* *46 (1765). Legislators may not act "like Caligula, who … wrote his laws in a very small character, and hung them up on high pillars, the more effectually to ensnare the people." *Id.*

In the same vein, American courts have long held that "'it needs no argument to show … that all should have free access' to [the law's] contents." *Public.Resource*, 590 U.S. at 265 (quoting *Nash v. Lathrop*, 6 N.E. 559, 560 (Mass. 1886)); *see id.* at 263-65 (recounting history); *Banks v. Manchester*, 23 F. 143, 145 (C.C.S.D. Ohio 1885) (collecting cases), *aff'd*, 128 U.S. 244 (1888). "[E]very person is presumed to know the law," but only because the law is "published freely." *Banks*, 23 F. at 145; *accord Public.Resource*, 590 U.S. at 265. Thus, it does not fall "within the constitutional power of the legislature to enact that the statutes and opinions should not be made known to the public." *Nash*, 6 N.E. at 560; *see Public.Resource*, 590 U.S. at 265 (relying on *Nash*); *Banks*, 128 U.S. at 253-54 (same). If "the law" is not "generally available for the public to examine," they will be "deprived of the notice to which due process entitles them." *BOCA*, 628 F.2d at 734.

As incorporated into federal and state law, the *Manual* implicates due process. Any law that deprives individuals of "liberty" or "property" must comply with due process. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). As part of federal HIPAA standards, the *Manual* defines how providers and health plans must submit and receive electronic bills under pain of monetary fines. 42 U.S.C. §§1320d-4, 1320d-5; 45 C.F.R. §§160.402(a), 162.1000(b). As part of Medicare regulations and state law, the *Manual* defines what providers must do to be "reimbursed at the duly promulgated reimbursement rate," an entitlement that qualifies as a "property interest." *Am. Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 455 (7th Cir. 2002); *see supra* at 6 & nn.2-3. Due process thus requires free and open publication of the *Manual*.

**b.** Extending copyright protection to the *Manual* would also violate the First Amendment. As a "content-based" restriction on speech, AHA's asserted copyright is "presumptively

18

unconstitutional," *Free Speech Coal. v. Paxton*, 606 U.S. 461, 471 (2025), unless AHA can show that it falls within "the traditional contours of copyright protection," *Eldred v. Ashcroft*, 537 U.S. 186, 221 (2003); *see Vidal v. Elster*, 602 U.S. 286, 295-96, 300-01 (2024) (applying this framework to trademark restrictions). But there is no tradition of granting copyrights to materials produced under delegated government authority and incorporated into law. To the contrary, there is a deeply rooted tradition deeming restrictions on access to the law to be tyrannical. *Supra* Part I.C.2.a.

Although history alone forecloses AHA's asserted copyright, AHA's position is also not "reasonable in light of the purpose of the [copyright] system." *Vidal*, 602 U.S. at 329 (Barrett, J., concurring in part). Copyright is meant to protect an author's unique "expressi[on]," not to confer a "monopol[y] on information that is "valuable for a different reason" (here, its incorporation into law). *Google v. Oracle Am.*, 593 U.S. 1, 38-39 (2021). And the principle that "all should have free access" to the law is so foundational to our system of government that it has always been understood to trump an author's interest in his expression. *Public.Resource*, 590 U.S. at 265. The *Manual* cannot fit into the copyright exception to the First Amendment's ban on content-based speech restrictions.

## II. Even if AHA's copyrights are valid, disclosing the *Manual* to the public is fair use.

Even if AHA holds valid copyrights, Count I must still be dismissed because releasing the *Manual* to the public is fair use. As courts have uniformly recognized, the "non-commercial dissemination" of "technical standards for an industry," "as incorporated by reference into law, constitutes fair use." *ASTM v. Public.Resource.Org, Inc.* (*ASTM II*), 82 F.4th 1262, 1265 (D.C. Cir. 2023); *accord ASTM III*, 752 F. Supp. 3d at 506; *Facility Guidelines Inst. v. UpCodes, Inc.*, 677 F. Supp. 3d 955, 973 (E.D. Mo. 2023); *NFPA v. UpCodes, Inc.*, 2021 WL 4913276, *7 (C.D. Cal. Aug. 9, 2021); *Int'l Code Council v. UpCodes, Inc.*, 2020 WL 2750636, *28 (S.D.N.Y. May 27, 2020); *see also Prac. Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 519 (9th Cir. 1997); *CCC Info. Servs. v. Maclean Hunter Mkt. Reps.*, 44 F.3d 61, 74 n.30 (2d Cir. 1994).

The "fair use of a copyrighted work … is not an infringement of copyright." 17 U.S.C. §107. This defense "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Google*, 593 U.S. at 18. Four factors guide the fair-use inquiry. §107. Taken together, they establish that PRA's public dissemination of the *Manual* would be fair use.

*First*, "the purpose and character of the use"—"including whether such use is of a commercial nature or is for nonprofit educational purposes"—favors fair use. §107(1). PRA is a nonprofit organization dedicated to transparency in healthcare that intends to post the *Manual* online "for free," so its "use is for nonprofit, educational purposes." *ASTM II*, 82 F.4th at 1267. This aim "tips the scales in favor of fair use." *Google*, 593 U.S. at 32. PRA's use also has "a purpose … different from the original," which further "weighs in favor of fair use." *Andy Warhol Found. for the Visual Arts v. Goldsmith*, 598 U.S. 508, 529 (2023). The NUBC produces the *Manual* to "allow providers and payers to communicate more clearly and efficiently." Compl. ¶1. And AHA's for-profit subsidiary licenses the *Manual* to make money. *See* ¶¶13, 19; AHA Form 990, Sched. R at 4. By contrast, PRA's goal is not to sell a competing billing standard or profit from its use of the *Manual* but to ensure—consistent with its mission—that the public is able to access and understand the billing classifications and procedures required by law. Doc.1-4 at 1; PRA Form 990 at 1. For purposes of fair use, this "distinction" in purpose between "producing standards" and "provid[ing] the public with … free" access to "the law" is "fundamental." *ASTM II*, 82 F.4th at 1268.

*Second*, "the nature of the copyrighted work," 17 U.S.C. §107(2), "weighs heavily in favor of fair use," *ASTM II*, 82 F.4th at 1268. Works that serve a "utilitarian" rather than "artistic" function receive lesser copyright "protection." *Google*, 593 U.S. at 20. As a standard "incorporated into law," the *Manual* falls "at best, at the outer edge of copyright's protective purposes." *ASTM II*, 82 F.4th at 1268. And the *Manual* is even less like an ordinary private work than the typical incorporated standard.

The *Manual* is not merely a collection of best practices that happened to be incorporated into law after publication. *Compare, e.g.*, *NFPA*, 2021 WL 4913276, *1 (discussing how the plaintiff's standards, whose "primary users" are other industry participants, are "sometimes incorporate[d]" into law). To the contrary, the NUBC develops it in its capacity as a DSMO charged by HHS with keeping its HIPAA regulations up to date. *Supra* Part I.A. Six of the NUBC's members—including four of the seven payers—are government entities, and two others are also DSMOs. *See* NUBC Protocol 4-5; *supra* Background, Part A. A document created through the efforts of government agencies, under the supervision of HHS, for the purpose of updating the federal regulations that govern electronic healthcare transactions, has *de minimis* expressive or artistic value and can receive no more than the weakest copyright protection.

*Third*, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. §107(3), also "strongly supports fair use," *ASTM II*, 82 F.4th at 1268. "[T]here is no per se rule against copying in the name of fair use an entire copyrighted work if necessary." *Chi. Bd. of Ed. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). Here, CMS and many States require use of the UB-04 Form, 42 C.F.R. §424.32(b); *supra* at 6 & nn.2-3, for which even AHA concedes the *Manual* as a whole provides the "necessary" "instructions," Compl. ¶42. Further, at least six States incorporate the entire *Manual* by reference, *supra* at 6 & n.3. Since governments have given "legal effect to [the] entire" *Manual*, "its entire reproduction is reasonable in relation to the purpose of the copying, which is to provide the public" with "free" access to "the law." *ASTM II*, 82 F.4th at 1269.

*Fourth*, "the effect of the use upon the potential market for or value of the copyrighted work," §107(4), supports fair use—or at least "does not significantly tip the balance one way or the other," *ASTM II*, 82 F.4th at 1272. Even if posting the *Manual* online is "likely to lower demand for" it, *id.* at 1271, any "potential loss of revenue is not the whole story," *Google*, 593 U.S. at 35. The "source of the loss" matters, not just the "amount"; some economic harms, like those resulting from a "scathing …

21

review," are not "cognizable under the Copyright Act." *Id.* And "copyright 'should not grant anyone more economic power than is necessary to achieve the incentive to create.'" *Id.* at 21. This factor also requires "balancing" the "losses" the plaintiffs may incur against "the public benefits the copying will likely produce." *Id.* at 35-36. Given the NUBC's strong incentive to continue producing the *Manual* even if it is made available freely to the public, and "the substantial public benefits of free and easy access to the law," this factor too favors fair use. *ASTM II*, 82 F.4th at 1271.

Much of the financial loss AHA and its for-profit subsidiary may suffer if the *Manual* comes out from behind a paywall is not cognizable harm under the Copyright Act. The *Manual* is "valuable" because providers and payers *must* use it, not "because of its expressive qualities." *See Google*, 593 U.S. at 38-39 (lost revenue from copying of computer code that is "valuable" because "users … are just used to it" and "have already learned how to work with it" not cognizable). If tomorrow the federal and state governments required a completely different system of billing procedures, demand for the *Manual* would collapse, no matter how much "creativity" went into its development. Compl. ¶4.

Moreover, even if open publication of the *Manual* were treated as fair use, "self-interest" would continue to incentivize AHA to contribute to the NUBC and the *Manual*. *Veeck*, 293 F.3d at 806. "[I]t is difficult to imagine an area of creative endeavor in which the copyright incentive is needed less" than the production of model standards. *Id.* "Trade organizations have powerful reasons stemming from industry standardization, quality control, and self-regulation to produce these model codes; it is unlikely that, without copyright, they will cease producing them." *Id.*

That is especially true here, because the *Manual* defines the process for *how hospitals get paid*. It is self-evident that hospitals and their industry associations have ample incentive to develop guidelines that will help them get paid more efficiently.[4] And, to repeat, the NUBC produces the *Manual* on

---

[4] With reported spending of over $132 million in 2022, AHA appears perfectly capable of devoting resources to matters of importance to its members. *See* AHA Form 990 at 10.

behalf of HHS, and the very federal and state governments that require use of the *Manual* are part of the NUBC—including CMS and its $1.75 trillion annual budget. If the *Manual* is essential for those government entities, they will have every incentive to support it financially.

Plaintiffs manifestly receive more income from the *Manual* than is "equitable" or necessary to produce it. *Google*, 593 U.S. at 18. AHA alleges that its staff working on the *Manual* "are supported by [its] sales." Compl. ¶36. But, tellingly, AHA never alleges that it charges *only* what is necessary to support the *Manual*'s production (a claim that would not be plausible given the stiff rates it charges for an annual license, *see* ¶44). Indeed, AHA's suggestion that it merely charges a fee to help offset its costs is flatly contradicted by the fact that the Manual is licensed by AHA's *for-profit* subsidiary (Health Forum LLC), ¶¶13, 19, even though AHA is supposed to hold the *Manual*'s copyright only "on behalf of the NUBC." NUBC Protocol 7. The *Manual* is supposed to be "a social good," not a profit center for the for-profit subsidiary of a powerful industry association. Compl. ¶3.

On the other side of the ledger, the "public benefits of free and easy access to the law" are "substantial"—especially here. *ASTM II*, 82 F.4th at 1271. In *ASTM II* the copyright owners already made their "standards available for free in online reading rooms." *Id.* at 1270. But it was still fair use to post them online because the online rooms were not as "convenient" as the defendant's website. *Id.* Here, AHA offers *no* option for the public to access the *Manual* for free. *See* Compl. ¶¶44-45.

Moreover, even among incorporated standards, the *Manual* is of exceptional public importance. The *Manual* has not simply been incorporated by a locality or two, as in some other model-standard cases. *See, e.g., Veeck*, 293 F.3d at 793 (ordinances of "two small towns"). By forming part of the federal HIPAA regulations and the laws of over 30 States, it defines legal obligations for "nearly all current healthcare payers." Compl. ¶40. Given the essential role the *Manual* and its codes play in the healthcare industry, it is critical to allow the public to analyze and discuss them freely. Hiding the *Manual* behind a paywall operated by a for-profit entity "would interfere with, not further, copyright's

23

basic creativity objectives." *Google*, 593 U.S. at 39. The market-effect factor thus supports fair use. At minimum, this last factor cannot overcome the weight of "the first three factors," which "strongly favor fair use." *ASTM II*, 82 F.4th at 1272.

If any doubt remains, constitutional avoidance requires a finding of fair use, *ASTM I*, 896 F.3d at 447; *supra* Part I.C.2, particularly because the fair-use defense is meant to safeguard "First Amendment values," *Harper & Row*, 471 U.S. at 555. The public cannot be denied open access to the *Manual*.

**III. The license agreement cannot extinguish the public's right to access the *Manual*.**

AHA asserts that the *Manual*'s license agreement prevents PRA from disclosing the *Manual* to the public even if doing so would not be copyright infringement. But AHA cannot by contract obtain what the Copyright Act denies it. The license agreement's no-contest and confidentiality provisions are invalid under federal law because they are copyright abuse. The provisions are invalid under Illinois contract law because they are contrary to public policy. And by their terms they apply only to the 2026 edition of the *Manual* and do not apply to PRA's fair use defense. Counts II and III must be dismissed.

**A. The license agreement is void under federal law.**

AHA argues that it and its subsidiary can prevent *anyone* from *ever* sharing the *Manual* with the public, *regardless* of the strength or validity of its copyright. Courts cannot tolerate such a "transparen[t]" effort "to annex a portion of the intellectual public domain" and eliminate fair use. *Assessment Techs. of Wis. v. WIREdata, Inc.* (*WIREdata II*), 361 F.3d 434, 437 (7th Cir. 2004). The no-contest and confidentiality provisions are unenforceable under the copyright-misuse doctrine.

The copyright-misuse doctrine forbids a copyright holder "to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990) (alterations in original) (quoting *Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492 (1942)); *accord Assessment Techs. of Wis. v. WIREdata* (*WIREdata I*), 350 F.3d 640, 647 (7th Cir. 2003). Copyright misuse is a "defense" both "to infringement" and "to enforc[ing] any contract" right improperly obtained. *WIREdata I*, 350 F.3d at 647.

24

AHA has committed copyright misuse by improperly leveraging its *presumptive* right of ownership in the *Manual*, subject to fair use, into an *absolute* right to gatekeep and profit from access to the law. AHA has registered copyright claims in the *Manual.* Compl. ¶43; Doc.1-1. Registration creates a presumption that the *Manual* is AHA's intellectual property. 17 U.S.C. §410(c); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914-15 (7th Cir. 2007). But that presumption can be overcome in litigation, and even a valid copyright must yield to fair use. §107.

Health Forum's license agreement, however, leverages its power as the sole seller of the *Manual* to eliminate the possibility of challenging the copyright or establishing fair use. Regardless of whether the *Manual* is actually AHA's intellectual property or whether fair use is supported, the license purports to bar licensees from sharing the *Manual* or challenging its copyrightability. This result is "contrary to public policy." *Lasercomb*, 911 F.2d at 977. The public has the right to access the law *and* to freely discuss it. *Veeck*, 293 F.3d at 799. Waiving the right to share and discuss the law cannot be the price of accessing it. Just as "Westlaw cannot prevent its licensees from copying the opinions" on its site, AHA and Health Forum cannot prevent licensees from copying and sharing the *Manual. WIREdata I*, 350 F.3d at 644; *cf. Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969) (state contract law cannot prevent a patent licensee from challenging the validity of a patent because that would undermine "the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain").

AHA's copyright misuse is particularly egregious because it purports to prevent *anyone* from *ever* making the *Manual* freely available, *even if* it is law the public has a right to access it. AHA has developed a convoluted scheme in which its for-profit subsidiary is the sole source for obtaining the *Manual*, by requiring every NUBC member to "disclai[m] ownership" of the *Manual* when the member joins. Compl. ¶30. And Plaintiffs then require every purchaser to accept a form license that includes the confidentiality and no-contest provisions. ¶¶48-55. So even if an organization that had not yet

purchased access to the *Manual* successfully challenged AHA's copyright in court, that challenge would avail it nothing. The challenger would still have to obtain access from AHA's for-profit subsidiary, which would require it to waive by contract the right it had vindicated in court. That is an intolerable result. AHA cannot permanently lock the law behind a for-profit paywall in a society where "it needs no argument to show that all should have free access to its contents." *Public.Resource*, 590 U.S. at 265 (cleaned up).

Plaintiffs' reliance on *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir. 1987), is misplaced. *See* Compl. ¶105. That case rejected a categorical "rule that would automatically invalidate every no-contest clause" in copyright licenses. 816 F.2d at 1200. Far from denying that some no-contest clauses are unenforceable, the decision made clear that courts must "balanc[e] … the pros and cons of the clause in each case." *Id.* There, the pros of the no-contest clause outweighed the cons. The case was a commercial dispute between a manufacturer with "an exclusive license" to make certain "porcelain dolls" and the copyright holder. *Id.* at 1192-93. The manufacturer had "used its expressed doubts of the validity of the … copyrights to obtain a lower royalty rate in the negotiations for the license." *Id.* at 1200. Other manufacturers could still challenge the copyright. *Id.* at 1199. And unlike the patent context—where no-contest clauses *are* categorically unenforceable, *Lear*, 395 U.S. at 670— the "economic power" conferred by the copyright was small. *Saturday Evening Post*, 816 F.2d at 1200. The copyright did not "forbid the making of close substitutes," *id.* at 1199, and "the price and output of porcelain dolls would be about the same whether or not" the copyright was invalidated, *id.* at 1201.

Here, by contrast, the cons of Plaintiffs' oppressive licensing agreement vastly outweigh the pros. The *Manual* is "necessary" for HIPAA-compliant electronic billing and a host of reimbursement claims to federal and state governments. Compl ¶42. There is no adequate "substitut[e]." *Saturday Evening Post*, 816 F.2d at 1199. AHA seeks to use a purported copyright to limit public access to the information in the *Manual* and vastly increases its price. *See* Compl. ¶¶58, 74. PRA is not seeking to

disclose the Manual to make a profit or to sell a competing product; it is merely seeking to ensure the public has access to the law without having to go through a for-profit gatekeeper. Health Forum demands the same take-it-or-leave-it price and terms for all but the largest institutions. ¶44. If the clause is enforced, there is no other way to effectively challenge AHA's copyright. And at stake is the public's compelling interest in accessing and discussing the law, not porcelain dolls. The no-contest and confidentiality provisions are void and cannot be enforced.

### B. The license agreement is void under Illinois law.

State contract law likewise prohibits the enforcement of the license agreement. The basis of Plaintiffs' contract claim is Illinois law. *See* Agreement §7. Under Illinois law, the no-contest and confidentiality provisions are void because they are "contrary to public policy." *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 537 N.E.2d 730, 734 (Ill. 1989). "The public policy of [Illinois] is reflected in its constitution, its statutes and its judicial decisions." *Id.* It "can also be found in federal law." *Signapori v. Jagaria*, 84 N.E.3d 369, 374 (Ill. App. Ct. 2017). These sources of law firmly establish a public policy of open access to the law and government documents generally.

Federal decisions have long recognized the "public policy" that the law is "public property, to be published freely by anyone who may choose to publish them." *Banks*, 23 F. at 145 (collecting cases); *see also* 17 U.S.C. §105(a). This policy is so foundational as to "nee[d] no argument." *Public.Resource*, 590 U.S. at 265. Likewise, the Due Process Clauses of the federal and Illinois Constitutions require the government to give citizens "notice" of what the law requires. *Davis*, 588 U.S. at 451; *People v. Molnar*, 857 N.E.2d 209, 218 (Ill. 2006), which includes ensuring that the law is "generally available for the public to examine," *BOCA*, 628 F.2d at 734; *accord Nash*, 6 N.E. at 560; *supra* Part I.C.2.a.

Illinois's Freedom of Information Act further declares it "to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials." 5 Ill. Stat.

27

140/1 §1. "Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* This policy is rooted in "the fundamental philosophy of the American constitutional form of government." *Id.* And Illinois courts will not enforce contracts contrary to this policy. *Fraternal Ord. of Police, Chicago Lodge No. 7 v. City of Chicago*, 59 N.E.3d 96, 105 (Ill. App. Ct. 2016).

In light of the foregoing authorities, a contract with the object and effect of restricting the public's access to the law and important government documents is contrary to the public policy of Illinois. Plaintiffs cannot invoke Illinois contract law to justify for-profit gatekeeping of the *Manual*.

### C. The license agreement is largely inapplicable by its terms.

Even if the entire license agreement were valid, the copyrightability of the *Manual* and fair use would still be properly before this Court. Plaintiffs' complaint seeks to prevent PRA from disclosing "any copyrighted version of the *UB-04 Manual*." Compl. 26. But the agreement applies, by its terms, only to the 2026 edition of the *Manual*, and it says nothing about fair use.

Plaintiffs allege that PRA purchased access to the "*2026 Edition*" of the *Manual*. Doc.1-4 at 2; *see* Compl. ¶59 (noting PRA's alleged purchase occurred "in July 2025"); *Manual* Purchase Webpage 2 (explaining that the annual "subscription cycle" lasts from "July 1 to June 30," with the 2026 edition license expiring on "June 30, 2026"). Plaintiffs do not allege that PRA or its agents have purchased any other past or future editions. The license agreement defines the "Content" subject to its terms as "the products, data and other material You purchased from Licensor." Agreement §1. It grants a license "to access" and "use" only "the Content," nothing more. §1. As AHA's webpage explains, at "the end of the licensing period," the "2026 Manual eBook … will expire and you will need to purchase a new license for the 2027 Edition of the Manual." *Manual* Purchase Webpage 2. Likewise, §§1 and 4 of the agreement prohibit the licensee to disclose or to challenge AHA's ownership in the "Content,"

28

nothing more. The license agreement therefore has nothing to say about PRA's right to challenge or disclose any earlier or later edition of the *Manual*, since Plaintiffs do not allege that PRA accepted or agreed to a license for such editions.

Further, even with respect to the 2026 edition, nothing in the license forecloses a fair use defense to copyright infringement. The agreement provides that the licensee will not challenge AHA's "proprietary rights in and ownership of the Content." Agreement §4. A fair use defense does not deny ownership. It merely establishes that a use of the work is not infringement *despite* the author's claimed ownership of and rights in the work. 17 U.S.C. §107; *Harper & Row*, 471 U.S. at 549. Even if the Manual were copyrightable, *but see supra* Part I, and even if the no-contest provision were enforceable to some extent, *but see supra* Part III.A-B, it would not by its terms apply to any fair use arguments.

To the extent there is any doubt, the license agreement must be construed in favor of PRA. The license agreement is a "contract of adhesion"—"a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate." *Zuniga v. MLB*, 196 N.E.3d 12, 21 (Ill. App. Ct. 2021); *see* Compl. ¶¶44, 48-54; *Manual* Purchase Webpage. "[B]urdensome clauses in adhesion contracts should be construed" "strictly … against the more powerful party." *RE/MAX R.E. Pros., Inc. v. Armstrong*, 680 N.E.2d 520, 523-24 (Ill. App. Ct. 1997).

Accordingly, the Complaint at minimum should be dismissed to the extent that Plaintiffs assert claims relating to editions of the *Manual* other than the 2026 edition. And even as to the 2026 edition, Counts I and III should be dismissed because releasing the *Manual* is fair use.

## IV. At minimum, Count III must be dismissed.

Even if the license agreement is valid and applies to every edition of the *Manual*, Count III still must be dismissed. Plaintiffs allege in Count III that, beyond having a valid copyright, they have the contractual right never to incur any litigation costs defending that copyright. Compl. ¶¶107-09. Count III therefore seeks, in addition to the other relief Plaintiffs demand, a declaratory judgment that any future suit by PRA challenging the copyright in the *Manual* would be unlawful. Compl. 26. In effect,

Count III seeks an antisuit injunction that would apparently apply even to future editions of the *Manual* that do not yet exist and for which PRA has not accepted any licensing terms.

This extraordinary request is extraordinarily improper. Plaintiffs cannot pursue "[d]eclaratory relief" to avoid incurring hypothetical future litigation costs absent "a predicate right of action" to recover them. *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019). But the license agreement creates no such right. Under Illinois law, a "contract must allow for attorney fees by specific language, such that the provision at issue must specifically state that 'attorney fees' are recoverable." *Bank of Am. v. WS Mgmt., Inc.*, 33 N.E.3d 696, 734 (Ill. App. Ct. 2015). The same rule applies for "other costs of litigation." *Int'l Fed'n of Pro. & Tech. Eng'rs, Loc. 153 v. Chicago Park Dist.*, 812 N.E.2d 407, 411 (Ill. App. Ct. 2004). The no-contest clause does not contain this language. It merely states that the licensee "will not challenge" AHA's asserted "proprietary rights." Agreement §4. If valid, that provision might doom a challenge to AHA's copyright on the merits. *But see supra* Part III. It does not, however, confer the additional right to avoid litigation costs. Any doubt on this point must be resolved in PRA's favor, *RE/MAX R.E.*, 680 N.E.2d at 523, particularly because Plaintiffs' requested relief would apparently cover challenges to works that do not even exist yet.

Plaintiffs have no right to doubly insulate their actions from legal scrutiny by declaring a hypothetical future lawsuit against them to be breach of contract. Even if Plaintiffs were right about everything else in this litigation, Count III must be dismissed.

## CONCLUSION

This Court should dismiss the complaint with prejudice for failure to state a claim.

Dated: February 13, 2026

Respectfully submitted,

  */s/ Jeffrey M. Harris*
Jeffrey M. Harris*
Cameron T. Norris
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

*admitted pro hac vice*

*Counsel for Defendant*

31