**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AMERICAN HOSPITAL ASSOCIATION and HEALTH FORUM LLC,
*Plaintiffs*,

v.

PATIENTRIGHTSADVOCATE.ORG, INC.
*Defendant*.

Case No. 1:25-cv-15137

Hon. Martha Pacold

# REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Jeffrey M. Harris*
Cameron T. Norris
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

**admitted pro hac vice*

*Counsel for Defendant*

## TABLE OF CONTENTS


Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 2

I. AHA's copyrights in the *Manual* are invalid. ................................................................ 2

  A. The NUBC produces the *Manual* in a lawmaking capacity ........................................ 2

  B. The *Manual* is a work of the United States government. .......................................... 4

  C. The *Manual* is not copyrightable because it is incorporated into law ......................... 6

II. Even if AHA's copyrights are valid, disclosing the *Manual* to the public is fair use. ............... 10

III. The license agreement cannot extinguish the public's right to access the *Manual*.................... 12

  A. The license agreement is void under federal law. ....................................................... 12

  B. The license agreement is void under Illinois law. ........................................................ 14

  C. Plaintiffs concede that the license agreement is largely inapplicable by its terms. ...... 15

IV. At minimum, Count III must be dismissed. ................................................................. 15

Conclusion ......................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Dental Ass'n v. Delta Dental Plans Ass'n*,
126 F.3d 977 (7th Cir. 1997) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Assessment Techs. of Wis. v. WIREdata, Inc.*,
350 F.3d 640 (7th Cir. 2003) .......... 13

*Assessment Techs. of Wis. v. WIREdata, Inc.*,
361 F.3d 434 (7th Cir. 2004) .......... 13

*ASTM v. Public.Resource.Org, Inc.*,
82 F.4th 1262 (D.C. Cir. 2023) .......... 11, 12

*ASTM v. UpCodes, Inc.*,
__ F.4th __, 2026 WL 935309 (3d Cir. Apr. 7, 2026) .......... 1, 3, 10, 11

*Bell v. Eagle Mountain Saginaw ISD*,
27 F.4th 313 (5th Cir. 2022) .......... 1, 10

*BOCA v. Code Tech., Inc.*,
628 F.2d 730, 732 (1st Cir. 1980) .......... 9

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .......... 10

*Canadian Standards Ass'n v. P.S. Knight Co.*,
112 F.4th 298 (5th Cir. 2024) .......... 8, 9

*Canadian Standards Ass'n v. P.S. Knight Co.*,
145 S. Ct. 1135 (2025) .......... 8

*CCC Info. Servs. v. Maclean Hunter Mkt. Reps.*,
44 F.3d 61 (2d Cir. 1994) .......... 9, 11

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) .......... 7

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 10

*Erickson v. Trinity Theatre*,
13 F.3d 1061 (7th Cir. 1994) .......... 6

*Erlinger v. United States*,
602 U.S. 821 (2024)....................9
*Est. of Landers v. Leavitt*,
545 F.3d 98 (2d Cir. 2008)....................7
*Galette v. N.J. Transit Corp.*,
146 S. Ct. 854 (2026)....................4
*Georgia v. Public.Resource.Org*,
590 U.S. 255 (2020)....................2, 4, 8, 9, 14
*Google LLC v. Oracle Am., Inc.*,
593 U.S. 1 (2021)....................11, 12
*Herbert v. United States*,
36 Fed. Cl. 299 (1996)....................6
*Honeywell Int'l v. OPTO Elecs. Co.*,
135 F.4th 170 (4th Cir. 2025)....................13
*Interstate Consol. St. Ry. Co. v. Massachusetts*,
207 U.S. 79 (1907)....................6
*Jam v. Int'l Fin. Corp.*,
586 U.S. 199 (2019)....................7
*Janky v. Lake Cnty. Convention & Visitors Bureau*,
576 F.3d 356 (7th Cir. 2009)....................1
*Kulhanek v. Casper*,
232 N.E.3d 1101 (Ill. App. Ct. 2023)....................15
*Lasercomb Am., Inc. v. Reynolds*,
911 F.2d 970 (4th Cir. 1990)....................13, 14
*NAACP v. Am. Fam. Mut. Ins. Co.*,
978 F.2d 287 (7th Cir. 1992)....................15
*Olivier v. City of Brandon*,
146 S. Ct. 916 (2026)....................12
*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................15
*Prac. Mgmt. Info. Corp. v. AMA*,
121 F.3d 516 (9th Cir. 1997)....................9, 11

*Preseault v. ICC*,
494 U.S. 1 (1990) .......... 10

*Princo Corp. v. ITC*,
616 F.3d 1318 (Fed. Cir. 2010) .......... 13

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996) .......... 14

*Rahimzadeh v. Ace Am. Ins. Co.*,
142 F.4th 972 (7th Cir. 2025) .......... 2

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*,
816 F.2d 1191 (7th Cir. 1987) .......... 12, 13

*Sorenson v. Fio Rito*,
413 N.E.2d 47 (Ill. App. Ct. 1980) .......... 15

*United States v. Sharpnack*,
355 U.S. 286 (1958) .......... 7

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
293 F.3d 791 (5th Cir. 2002) .......... 4, 8, 9, 10

**Statutes and Rules**

17 U.S.C. §107 .......... 11

35 Stat. 1077 (1909) .......... 7

42 U.S.C. §1320d-2(a)(1)(A) .......... 2

42 U.S.C. §1320d(1) .......... 3

42 U.S.C. §1320d-3(b)(2)(A) .......... 2, 3

42 U.S.C. §1320d-4 .......... 2

42 U.S.C. §1320d-5 .......... 2

42 U.S.C. §1320d-7(a)(1) .......... 2

45 C.F.R. §162.103 .......... 2, 3

45 C.F.R. §162.910 .......... 2, 3

5 Ill. Comp. Stat. 140/1 (2024) .......... 14

65 Fed. Reg. 50,312 (2000) .......... 3

7 Alaska Admin. Code §27.660(b) .......... 7

Minn. Admin. R. 5221.0700, subp. 3(A) .......... 7

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| 835 | ASC X12N 835—Health Care Claim Payment/Advice |
| 837I | ASC X12N 837—Health Care Claim: Institutional |
| AHA | American Hospital Association |
| CMS | Centers for Medicare & Medicaid Services |
| DSMO | Designated Standards Maintenance Organization |
| HHS | Department of Health and Human Services |
| HIPAA | Health Insurance Portability and Accountability Act |
| *Manual* | *UB-04 Data Specifications Manual* |
| NAMD | National Association of Medicaid Directors |
| NUBC | National Uniform Billing Committee |
| PRA | PatientRightsAdvocate.Org |

## INTRODUCTION

Plaintiffs' practice of hiding the *Manual* behind a for-profit paywall is indefensible. Plaintiffs concede that federal HIPAA regulations require use of the *Manual*, making its codes mandatory in virtually every electronic healthcare transaction. Plaintiffs also do not contest that six States expressly incorporate the *Manual* by reference into the text of their regulations, with at least two dozen more also requiring its use. These undisputed points flatly refute Plaintiffs' contention that the *Manual* is not "the law" and does not define anyone's legal obligations.

Plaintiffs likewise concede that federal agencies are members of the NUBC, which must approve the *Manual*'s content by majority vote. And Plaintiffs do not dispute that they first produced the *Manual* only after HHS named the NUBC a designated standards maintenance organization. All of this negates Plaintiffs' claim that the *Manual* is AHA's private creation. Further, a unanimous and growing chorus of decisions agree that making public standards incorporated into the law is fair use—including the Third Circuit after PRA filed its initial motion. *ASTM v. UpCodes, Inc.*, __ F.4th __, 2026 WL 935309 (3d Cir. Apr. 7, 2026) (*ASTM III*).

Plaintiffs also do not deny that the effect of their form contracts is to make it impossible for anyone to ever make the *Manual* public, *even if* it is uncopyrightable law that the public has a right to access. Neither federal nor Illinois law tolerates that outcome. In any event, Plaintiffs concede that any agreement to which PRA might be bound is limited to the 2026 edition, meaning they at minimum cannot insulate themselves from scrutiny for any past or future edition.

Faced with an impossible case on the merits, Plaintiffs lean heavily on the general motion to dismiss standard. But even granting Plaintiffs every reasonable factual inference in their favor, their complaint still fails as a matter of law. "[C]opyrightability" is "an issue of law." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 363 (7th Cir. 2009). Courts have "[i]ncreasingly" upheld fair use on motions to dismiss, *Bell v. Eagle Mountain Saginaw ISD*, 27 F.4th 313, 320 (5th Cir. 2022), an outcome that makes particular sense where courts have unanimously found fair use on the same fact

pattern. And the enforceability of a contract on "public policy" grounds is likewise a question of law appropriately resolved on a motion to dismiss. *Rahimzadeh v. Ace Am. Ins. Co.*, 142 F.4th 972, 976 (7th Cir. 2025). Factual development is not needed to find that the public has the right to access the *Manual*.

## ARGUMENT

### I. AHA's copyrights in the *Manual* are invalid.

For three independent reasons, AHA has no valid copyright in the *Manual*.

#### A. The NUBC produces the *Manual* in a lawmaking capacity.

The *Manual* is uncopyrightable because the NUBC adopts it while acting as a DSMO. MTD (Doc.31) 10-11. Plaintiffs concede the NUBC is a DSMO. Opp. (Doc.42) 4. In that capacity, the NUBC is "empowered to speak with the force of law." *Georgia v. Public.Resource.Org*, 590 U.S. 255, 259 (2020). HIPAA standards are law. The HHS Secretary "adopt[s]" them, they define how providers and payers must format electronic health transactions under pain of monetary penalties, and they preempt contrary state law. 42 U.S.C. §§1320d-2(a)(1)(A), 1320d-4, 1320d-5, 1320d-7(a)(1). Under HIPAA, "additions and modifications of code sets" required by an adopted standard constitute a "modification to [the] standard" itself, and thus to the law. §1320d-3(b)(2)(A). HHS has delegated this law-modifying power to DSMOs: a DSMO can "[m]aintain standards adopted" by HHS, 45 C.F.R. §162.910(a)(1)(i), and to "maintain" includes altering "a code set," §162.103. As Plaintiffs concede, HIPAA standards require the use of the *Manual*'s codes. Opp.11; *see also* MTD.5. So when the NUBC adopts the latest edition of the *Manual*, it exercises its delegated authority to speak with the force of law. The *Manual* thus falls "outside the reach of copyright protection." *Public.Resource*, 590 U.S. at 259.

In arguing otherwise, Plaintiffs conflate the two distinct ways of altering a HIPAA standard and the role DSMOs play in each. The HIPAA regulations label more significant changes to the HIPAA standards (such as changing the data elements they require) "modifications." *See* 45 C.F.R. §§162.103, 162.910(a)(ii), (c). The DSMOs process requests for such changes and make recommendations on whether to adopt them, §162.910(a)(ii), (c), but the changes take effect only when directly

"adopted by the Secretary," §162.103. Less significant changes—*including modification of code sets*—constitute "maintenance" of a standard. *Id.*; *see* 65 Fed. Reg. 50,312, 50,322 (2000) (distinguishing "the terms modification and maintenance").[1] HHS has empowered the DSMOs to issue such changes without its specific approval, but they must still do so under "the processes the Secretary may require" and subject "to the satisfaction of the Secretary." §162.910(a)(1), (b). So although revising the *Manual* is not standard *modification* under the HIPAA regulations, *see* Opp.4-5, 11, it is standard *maintenance*. And a DSMO performing standard maintenance exercises delegated law-altering authority under HHS's supervision. §162.910(a)(1)(i), (b); *see* 65 Fed. Reg. at 50,343 (noting that HHS has "assigned responsibility for maintenance of data content" to the "NUBC").

It makes no difference that the 837I and 835 standards—and not the HIPAA regulations directly—adopt the NUBC's codes. *See ASTM III*, 2026 WL 935309, *8 (rejecting any distinction between direct and indirect incorporation by reference). The alteration of *any* "code set" required by a HIPAA standard constitutes standard "maintenance," and a "code set" is "any set of codes used to encode data elements." 45 C.F.R. §162.103; *see also* 42 U.S.C. §1320d(1). This "very broa[d]" definition encompasses "code sets (such as revenue codes) … designated within the transaction standards." 65 Fed. Reg. at 50,319. Revisions to the *Manual* are therefore standard maintenance authorized and regulated by 45 C.F.R. §162.910. *See* 65 Fed. Reg. at 50,334 (explaining that "changes to codes" required by the 835 standard will undergo "the maintenance and modification process set out at §162.910").

Plaintiffs argue at length that the NUBC is not a "federal agency" under precedents determining the scope of the First and Fourteenth Amendments. Opp.10-11. That is a red herring. The question

[1] Although the regulations distinguish between "modifying" and "maintaining" a standard, for statutory purposes "additions and modifications of code sets" constitute a "modification to [the] standard." 42 U.S.C. §1320d-3(b)(2)(A).

for copyright is whether the NUBC "wields [HHS]'s authority when it works … to produce the" *Manual*, *Public.Resource*, 590 U.S. at 268, not whether it is a federal agency for all purposes. The Court in *Public.Resource* never cited Plaintiffs' First and Fourteenth Amendment caselaw as relevant to that inquiry, *see id.* at 267-69, and with good reason. "[T]hose very cases warned" that "an entity 'can count as part of the State for some but not other purposes.'" *Galette v. N.J. Transit Corp.*, 146 S. Ct. 854, 874 (2026); *cf. Public.Resource*, 590 U.S. at 267 (holding that Georgia's Code Revision Commission "functions an arm of [the legislature] for the purpose of" the government-edicts doctrine even though it "is not identical to the Georgia Legislature"). Because Plaintiffs' cases arose "outside the [government-edicts] context," they have "little bearing … here." *Galette*, 146 S. Ct. at 874-75.[2]

Finally, the *Manual* is an edict of the NUBC *qua* DSMO regardless of whether the NUBC's members qualify as joint authors (although they do, *see infra* I.B). *Contra* Opp.9-10. A "law professo[r]" cannot "asser[t] a copyright" in an enacted statute even if he drafted every word of it. *Veeck*, 293 F.3d at 798. Still less can individual legislators own "the work [they] perform in their capacity as legislators." *Public.Resource*, 590 U.S. at 269. Like a legislator, AHA drafts and revises the *Manual in its capacity* as an NUBC member and its secretariat. Compl. ¶¶28-29, 36-37, 70; Opp.3, 5-6. Even if the AHA were more like an outside law professor, the "changes" it proposes take effect only if "the NUBC approves" them. Compl. ¶37; *accord* Opp.5; NUBC Protocol (Doc.31-1) 10-11. Because of the NUBC's role as a DSMO, the *Manual* it adopts is an uncopyrightable government edict regardless of who drafts it.

**B. The *Manual* is a work of the United States government.**

Even apart from the government-edicts doctrine, the *Manual* is not copyrightable because the NUBC's members, which include federal agencies, author it jointly. Because each joint author is

[2] Plaintiffs also appear to assume that the NUBC's DSMO status is relevant only if it would make the *Manual* a "government work" under 17 U.S.C. §105(a). *See* Opp. 10. That's incorrect. Section 105 is meant to *expand on* the older government-edicts doctrine (by including within the public domain works of federal officials with *no* lawmaking authority), not to "displace" it. *Public.Resource*, 590 U.S. at 269-70. If a work falls within the government-edicts doctrine, it is uncopyrightable regardless of whether §105 applies. *See id.*; *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 798 n.10 (5th Cir. 2002) (en banc).

deemed author of the entire work, the *Manual* is an uncopyrightable "work of the United States Government." 17 U.S.C. §105(a); *see* MTD.11-15.

The NUBC's members intend to create a joint work. Plaintiffs do not contest the *Manual* is a single product, that it is widely billed as the product of the NUBC collectively, or that the members share control over it. *See* MTD.12-13; Opp.10. Plaintiffs even concede there is a "joint work where co-authors [a]re listed." Opp.10. The *Manual*'s cover declares that it is "adopted by NUBC." *Manual* Purchase Webpage (Doc.31-5) 1.

The NUBC's members also independently contribute expression to the *Manual*. To the extent the *Manual* qualifies as an original work, it is as a "scheme of classification." *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979 (7th Cir. 1997). As Plaintiffs concede, Opp.5, 12, the NUBC collectively decides the content of that scheme and the specific text used to express it. Compl. ¶¶36-37; NUBC Protocol 10-11. "After the NUBC approves changes to the *UB-04 Manual*, AHA employees" perform only the ministerial task of deciding "where" to put the new text within the *Manual* and how to "presen[t]" it. Compl. ¶37; *accord* Opp.5. Were it otherwise, AHA's conduct would violate antitrust law, MTD.13, a point Plaintiffs do not dispute, *see* Opp.8-13.

Plaintiffs fall back on the claim that AHA "principally draft[s] … the *Manual*'s text," Opp.9, but that is irrelevant for two reasons. First, on Plaintiffs' own telling, proposed changes are mere "suggestions" until "*the NUBC* decides whether to accept" them. Opp.12. And it would be absurd to call AHA the sole author of changes passed over its "dissenting vote." Opp.12. Second, as the squirrely adverbs "principally" and "frequently" make clear, AHA does not "draft" *all* the *Manual*'s text. Opp.3, 5, 9; Compl. ¶36. Other members, like CMS, have drafted at least some codes. MTD.14. Plaintiffs claim individual codes are not "significant copyrightable material," Opp.12, but drafting new codes clears the low bar of originality by reshaping the *Manual*'s "scheme of classification," *Am. Dental*, 126 F.3d at 979. As Plaintiffs elsewhere recognize, "adjusting codes to express concepts in the dynamic

healthcare sector" requires the "exercise" of "creativity and judgment." Compl. ¶70; *accord* ¶30. AHA's only *unique* role in the *Manual*'s production is to decide where to paste the text that *the NUBC* has adopted and that *some other entity* might have drafted. That cannot be the basis for sole authorship.

Plaintiffs insist that government agencies cannot be joint authors if AHA does most of the work of preparing the *Manual*, Opp.12-13, but black-letter law says otherwise. As long as the test for joint authorship is met, "even a person whose contribution is relatively minor" "hold[s] undivided interests in [the] work." *Erickson v. Trinity Theatre*, 13 F.3d 1061, 1068 (7th Cir. 1994). And because any work of a federal agency belongs to the public at large, any work coauthored by a federal agency belongs in the public domain. 17 U.S.C. §105(a); MTD.12.[3]

**C. The *Manual* is not copyrightable because it is incorporated into law.**

For three distinct reasons, the *Manual* is also not copyrightable because it is incorporated into federal and state law. *First*, as incorporated, it is a work of federal and state regulators. MTD.15-16. *Second*, it is a government edict regardless of authorship because it has the force of law. MTD.16. *Third*, it falls within the merger doctrine. MTD.16-17.

Plaintiffs all but concede this conclusion. They acknowledge that "where a government has *enacted the text* of a private work," that work enters the public domain. Opp.16. At least six States have done exactly that by expressly incorporating the *Manual* by reference into the text of state law. MTD.6 & n.3. To avoid the inexorable conclusion that the *Manual* is uncopyrightable, Plaintiffs invent a distinction between a law that "repeat[s] the *Manual*'s text verbatim" and one that incorporates it by reference. Opp.16. But over a century of precedent holds that when a law "incorporate[s]" "another document expressing" certain words, the incorporation "ha[s] the same effect as if [the law] itself contained the words." *Interstate Consol. St. Ry. Co. v. Massachusetts*, 207 U.S. 79, 84 (1907); *accord Jam v.*

[3] Although *Herbert v. United States*, 36 Fed. Cl. 299 (1996), is instructive on when members of a committee are joint authors, MTD.13-14, it did not involve "works containing partial contributions from the federal government," Opp.13. The committee members were all private individuals. *See Herbert*, 36 Fed. Cl. at 302.

*Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019); *United States v. Sharpnack*, 355 U.S. 286, 293 (1958); MTD.15. Plaintiffs cite no authority to the contrary. Moreover, even when governments do not *expressly* incorporate the *Manual* by reference, they still incorporate it in substance by requiring regulated parties to obey the classification rules that the *Manual* ordains. That is why HIPAA characterizes "modifications to code sets" required by a HIPAA standard as a "modification to [the] standard" itself. 42 U.S.C. §1320d-3(b)(2)(A).

As incorporated into federal and state regulations, the *Manual* unquestionably defines legal obligations. *Contra* Opp.16-17. Formally "promulgated, substantive agency regulations have the 'force and effect of law.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979). That principle "clearly" applies to regulations governing "reimbursement" under "Medicare" and state programs. *Est. of Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008). Both States and the federal government also incorporate the *Manual* in contexts where they act as regulators, not merely as "healthcare payers." Opp.17; *see, e.g.*, MTD.4-5 (purely private transactions governed by HIPAA); 7 Alaska Admin. Code §27.660(b) (reporting requirements for licensed healthcare facilities); Minn. Admin. R. 5221.0700, subp. 3(A) (medical bills for workers' compensation injuries sent to private employers).

Plaintiffs' analogy to *To Kill a Mockingbird* falls flat. Opp.17. No statute or regulation expressly incorporates novels—even those made part of the public school curriculum—into the text of state law. *Cf.* MTD.6 & n.3. And even setting aside express incorporation by reference, a regulation requiring students to *read* a novel (if such a regulation exists) differs from one requiring healthcare providers to *obey* the classification rules set forth in the *Manual*. Unlike a book assigned for school, the *Manual* sets forth rules that, by virtue of incorporation, take on the force of law and regulate private parties.

Plaintiffs' reliance on §7 of the Copyright Act of 1909 is also misplaced. Opp.14. By its terms, that provision applied only to "the United States Government," not the States. 35 Stat. 1077. Even as to the federal government, the provision is irrelevant because it has been repealed. Moreover,

incorporating model codes into law does not destroy any existing copyright they have "as model codes"; it simply creates a distinct government work in the public domain. *Veeck*, 293 F.3d at 805; MTD.16. If the law weren't a separate work, then on Plaintiffs' theory a statute copying a model code would be subject to copyright. Yet Plaintiffs concede that is not the case. Opp.16.

Accordingly, as incorporated into state and federal law, the *Manual* is uncopyrightable under the government-edicts doctrine. Although Plaintiffs insist the doctrine is inapplicable because the *Manual* is privately authored, Opp.14-15, that objection is wrong twice over. Federal and state regulators are "the final 'authors'" of the *Manual* to the extent they incorporate it into federal and state law. *Veeck*, 293 F.3d at 799; *see* MTD.15-16. And *Public.Resource* established that "no one can own the law," regardless of who authors it. 590 U.S. at 265. The decision focused on authorship to *include* within the government edicts doctrine "supplementary materials" that "do not have the force of law," not to *exclude* materials that unquestionably have the force of law. *Id.* at 273; *see* MTD.16. Plaintiffs simply ignore both these points. *See* Opp.14-15. Plus, even if the government-edicts doctrine failed to cover some materials with the force of law, the *Manual* would still be uncopyrightable under the merger doctrine, MTD.16-17, a point Plaintiffs do not meaningfully address, Opp.16. *Public.Resource* never considered the merger doctrine, which is distinct from the government-edicts doctrine. *See Veeck*, 293 F.3d at 794-95 (identifying the two doctrines as "alternativ[e]" grounds for its decision).

Precedent supports these conclusions. The only post-*Public.Resource* appellate decision to address the copyright status of works "incorporated by reference into law" held they "are not protected under the Copyright Act." *Canadian Standards Ass'n v. P.S. Knight Co.*, 112 F.4th 298, 304-05 (5th Cir. 2024).[4] The First Circuit likewise held that a model code incorporated by reference into law was likely

[4] As the language of the opinion makes clear, *Canadian Standards* was an incorporation-by-reference case, not a case where the legislature copied a model code verbatim. *See also* Cert. Pet.7, *Canadian Standards Ass'n v. P.S. Knight Co.*, 145 S. Ct. 1135 (2025) (No. 24-537) ("The relevant statutes and regulations do not enact the actual text of those extrinsic standards into law; instead, they incorporate the standards by reference."); *contra*

uncopyrightable, based on a discussion of authorship that anticipated *Public.Resource*. *BOCA v. Code Tech., Inc.*, 628 F.2d 730, 732, 734-35 (1st Cir. 1980).

In contrast, Plaintiffs' favored cases are both inapposite and outdated. *See* Opp.15-16. The plaintiff in *Practice Management* was "a publisher and distributor of medical books" that sought to obtain the AMA's medical codes "for resale." *Prac. Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 518 (9th Cir. 1997). It thus sought to publish the AMA's codes "as model codes," not as law. *Veeck*, 293 F.3d at 805 (distinguishing *Practice Management*). And the work in *CCC Info.* was not expressly incorporated into the text of state law. *See CCC Info. Servs. v. Maclean Hunter Mkt. Reps.*, 44 F.3d 61, 74 (2d Cir. 1994); App. to Cert. Pet.70a-77a, 516 U.S. 817 (1995) (No. 94-2004); *compare* MTD.6 & n.3. In any event, neither decision considered the issue of authorship, and both found that "policy considerations" trumped the public's right to free access to the law (while recognizing the availability of a fair use defense). *Prac. Mgmt.*, 121 F.3d at 519-20; *CCC Info.*, 44 F.3d at 74 & n.30. This reasoning is untenable now that *Public.Resource* has established an authorship-based test and affirmed that "no one can own the law." 590 U.S. at 265.

Finally, if any doubt remains, constitutional avoidance requires holding that the *Manual* is not copyrightable because it is incorporated into law. MTD.17-19. Plaintiffs do not contest that copyrighting the law violates the First Amendment. They respond only with the faulty notion that a work expressly incorporated into the text of state law is not the law. Opp.19-20.

Plaintiffs likewise concede that due process requires that regulated parties have "notice" of the *Manual*'s content, but maintain such notice exists as a practical matter. Opp.19. Functionalist arguments, however, cannot erode the Due Process Clause's "promise" to guarantee "those procedural protections well established at common law," *Erlinger v. United States*, 602 U.S. 821, 830 (2024),

---

Opp.16. And since *Canadian Standards* applied *Veeck*, *see* 112 F.4th at 300, Plaintiffs cannot claim that Fifth Circuit precedent supports their position, *see* Opp.16.

including notice by free publication of the law, MTD.17-18. Nor is it an answer to say that defendants can raise a due process defense in appropriate cases. Opp.19. Constitutional avoidance is proper if even "one of [a] statute's applications" raises constitutional problems, "whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005). On Plaintiffs' reading, the Copyright Act would unconstitutionally deprive all parties regulated by the *Manual* of constitutionally adequate notice. The Court must avoid that reading if at all possible.

The Takings Clause, on the other hand, provides no basis to rule for Plaintiffs. Holding that the *Manual as incorporated into law* is uncopyrightable effects no taking; any copyright Plaintiffs validly hold in the *Manual* "[a]s [a] model cod[e]" (*but see supra* I.A-B) would remain undisturbed. *Veeck*, 293 F.3d at 793. Regardless, a taking is not a constitutional problem to avoid. The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *Preseault v. ICC*, 494 U.S. 1, 11 (1990). If incorporating the *Manual* into law is somehow a taking, Plaintiffs' remedy is to obtain compensation from the (multiple) governments that did so.

## II. Even if AHA's copyrights are valid, disclosing the *Manual* to the public is fair use.

Plaintiffs' copyright claim separately fails because it is fair use to give the public access to the law. Every court to have reached this issue agrees, MTD.19, including now the Third Circuit.

For all their rhetoric, Plaintiffs do not dispute that fair use can be resolved on a motion to dismiss. *See* Opp.22. Indeed, "[i]ncreasingly, courts have considered fair use on a [R]ule 12(b)(6) motion to dismiss for failure to state a claim." *Bell*, 27 F.4th at 320 (collecting cases); *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692-94 (7th Cir. 2012); *Patry on Fair Use* §7:5 n.15 (2025) (citing 46 cases). Here, the first three factors clearly "weigh in favor of fair use," and "the fourth factor" *at best* is "equivocal." *ASTM III*, 2026 WL 935309, *12. Since no "discovery is needed to flesh out how [the fair-use] factors tilt," dismissal based on fair use is appropriate. *Bell*, 27 F.4th at 320-21.

*First*, PRA's *purpose* to make the law freely available is transformative and noncommercial. MTD.20; *see ASTM III*, 2026 WL 935309, *4-*8 (finding the first factor favored fair use even when the defendant, unlike PRA, had a "commercial" motive for making the law freely available). It is irrelevant that PRA does not plan to change the *Manual*. Opp.22. "[A] secondary work 'can be transformative in function or purpose without altering or actually adding to the original work.'" *ASTM III*, 2026 WL 935309, *5 (collecting cases); *see also* 17 U.S.C. §107 (listing making "multiple copies for classroom use" as an example of "fair use"). And, *contra* Opp.23, because the *Manual* has been "incorporated by reference into law," PRA's purpose is to convey "what the law is" *even assuming* the *Manual* retains some "copyright protection." *ASTM III*, 2026 WL 935309, *5; *accord ASTM v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1268 (D.C. Cir. 2023) (*ASTM II*); MTD.19. Even the cases Plaintiffs cite on copyrightability emphasize that the public's right to access the law would at least justify a "fair use" defense. *Prac. Mgmt.*, 121 F.3d at 519; *CCC Info.*, 43 F.3d at 74 n.30.

*Second*, Plaintiffs do not contest that the *Manual* lies at the "periphery of copyright's core protection," because it is "at the factual end of the fact-fiction spectrum," has been "incorporated by reference into law," and is drafted for HHS with the participation of government entities. *ASTM III*, 2026 WL 935309, *8; *see* MTD.20-21; Opp.23.

*Third*, Plaintiffs likewise do not deny that it would be reasonable to disclose the whole *Manual* if the *Manual* has been "incorporated in full into the law." *ASTM III*, 2026 WL 935309, *9; MTD.21; *see* Opp.23 (merely repeating Plaintiffs' mantra that the *Manual* is in no sense "law").

*Fourth*, even making every reasonable factual inference in Plaintiffs' favor, the market-effects factor cannot overcome the weight of the first three. *ASTM III*, 2026 WL 935309, *12; MTD.21-24. Plaintiffs entirely ignore that "this factor" requires "tak[ing] into account the public benefits the copying will likely produce." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35-36 (2021). Given "the substantial public benefits of free and easy access to the law," even a total loss of revenue for Plaintiffs would at

most make this factor equivocal. *ASTM II*, 82 F.4th at 1271. And if that alone weren't enough, Plaintiffs have not plausibly alleged that their "cognizable" losses would destroy their "incentive to create" the *Manual*. *Google*, 593 U.S. at 35. Inferences drawn in Plaintiffs' favor must be "reasonable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But it is not reasonable to infer that the *Manual*'s revenue comes principally from its inherent creativity rather than its compelled use; that, without the *Manual*'s current revenue, hospitals would lack sufficient incentive to establish an efficient system *for paying hospitals*; that the federal government would fail to support a code system that it helps develop and is integral to its HIPAA regulations; or that AHA's current revenue is equitable when it licenses the *Manual* through a for-profit subsidiary at steep annual rates. MTD.21-22. Tellingly, Plaintiffs do not engage with any of these points, even to show that it is plausible to infer otherwise. Opp.24.

## III. The license agreement cannot extinguish the public's right to access the *Manual*.

Plaintiffs do not deny that their uniform license agreement makes it impossible for anyone to ever make public the *Manual*, *even if* the *Manual* is the law. *See* MTD.25-26; Opp.20-22, 28-29. Neither federal nor Illinois law tolerates this result.

### A. The license agreement is void under federal law.

As a matter of federal law, both the license agreement's no-contest and confidentiality provisions are unenforceable copyright misuse. MTD.24-27. Plaintiffs cannot leverage their status as the sole source for the *Manual* to prevent the public from freely accessing and sharing the law. Plaintiffs' sole defense of the no-contest provision is that *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir. 1987), established a *per se* rule that only an antitrust violation can invalidate such a provision in a copyright license. Opp.20-21. That's wrong twice over.

First, "general language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Olivier v. City of Brandon*, 146 S. Ct. 916, 925 (2026). It might make sense in a purely commercial dispute between a licensor and a manufacturer to say that

an independent copyright-misuse doctrine "would jostle uncomfortably with the Sherman Act." *Saturday Evening Post*, 816 F.2d at 1200. But the due process harm of being denied free access to the law cannot be reduced to an injury to competition and certainly was not before the Court. MTD.26-27.

Second, even ignoring that critical difference, *Saturday Evening Post*'s comments on antitrust law were dicta the Seventh Circuit later rejected. The issue before the Court was whether to adopt a categorical "rule that would automatically invalidate every no-contest clause" in copyright licenses. 816 F.2d at 1200. It wasn't necessary to resolve the case to identify every circumstance where the "cons" of such a clause would outweigh the "pros." *Id.* The Seventh Circuit later clarified that it had in fact "left open" whether "copyright misuse" extends "beyond the bounds of antitrust." *Assessment Techs. of Wis. v. WIREdata, Inc.*, 350 F.3d 640, 647 (7th Cir. 2003) (*WIREdata I*). It then answered the question in the affirmative, holding that "copyright misuse" by a plaintiff, even apart from an antitrust violation, justified an award of attorney's fees to the defendant. *Assessment Techs. of Wis. v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004) (*WIREdata II*).

The confidentiality provision is likewise unenforceable because copyright misuse is a defense to breach of contract, not just copyright infringement. *WIREdata I*, 350 F.3d at 646-47.[5] Copyright misuse is simply the extension of patent misuse to copyright. *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 973-74 (4th Cir. 1990). And "patent misuse" is a defense to "infringement *or* breach of contract." *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (emphasis added); *accord Honeywell Int'l v. OPTO Elecs. Co.*, 135 F.4th 170, 178 (4th Cir. 2025). If that were not the case, copyright misuse would be a toothless defense. An entity that leveraged its copyright registration "to secure an exclusive right …

[5] *WIREdata I* did not need to resolve the issue of copyright abuse, Opp.27, precisely because the plaintiff was "not suing to enforce any contract." 350 F.3d at 647. But the Court nevertheless expressed its "profound skepticism" that a contract constituting copyright misuse would be enforceable. *Id.* The Court then awarded attorney's fees because the plaintiff's conduct came "close" to "copyright misuse," thereby elevating its previous analysis to a holding. *WIREdata II*, 361 F.3d at 437.

contrary to public policy" would be able to enforce that right in full by labeling its claim breach of contract rather than copyright infringement. *Lasercomb*, 911 F.2d at 977.

Even if Plaintiffs were right that PRA's attack on the confidentiality provision sounded in preemption rather than copyright abuse, Opp.25-26, Plaintiffs' breach of contract claim would still fail. Copyright law preempts "the law of contract" when it "interfere[s] with the attainment of national objectives." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1455 (7th Cir. 1996). *ProCD* upheld the "shrinkwrap license" at issue only after determining that it "would not withdraw any information from the public domain," because "[e]veryone remains free to copy and disseminate all 3,000 telephone books … incorporated into ProCD's database." *Id.* The same is not true here. There is no way to access the legal requirements contained in the *Manual* other than to agree to Plaintiffs' license agreement, and no way of disseminating them. MTD.25-26. And because *all* purchasers must submit to the license agreement, the agreement is a contract of adhesion, not a "simple two-party contract." *ProCD*, 86 F.3d at 1455.

**B. The license agreement is void under Illinois law.**

State contract law likewise prohibits the enforcement of the license agreement. MTD.27-28. *First*, Plaintiffs do not even attempt to explain how a contract that violates third parties' state and federal due process rights could comport with public policy. Opp.21-22, 28-29. *Second*, PRA wholeheartedly agrees that its reliance on the public policy against ownership of the law "reprise[s] its theories … that the *Manual* itself is federal law"—and state law too. Opp.28-29. If the *Manual* is the law, Plaintiffs cannot use contract to prevent "all" from having "'free access' to its contents." *Public.Resource*, 590 U.S. at 265. *Third*, Plaintiffs are wrong to dismiss Illinois's FOIA so breezily. Opp.21, 28. Because the federal government and the States have incorporated the *Manual* into law, it forms part of the "official acts and policies" on which "all persons are entitled to full and complete information" under "the public policy" of Illinois. 5 Ill. Stat.140/1 §1.

### C. Plaintiffs concede that the license agreement is largely inapplicable by its terms.

In all events, Plaintiffs concede that the license agreement "does not apply to other years' editions" besides "2026." Opp.25. And Plaintiffs agree the no-contest provision applies to "copyright-ability," not fair use. *See* Opp.20-22. Thus, even if the agreement is valid where it applies, Plaintiffs cannot *wholly* insulate their copyright claim from scrutiny on this motion to dismiss.

Anxious to avoid scrutiny on the merits, Plaintiffs attempt to downplay the breadth of their Complaint. Opp.25. But Plaintiffs' prospective claims squarely encompass all editions of the *Manual*. Count I asserts that *all* of AHA's registered copyrights in the *Manual* are valid. Compl. ¶67; *see also* ¶¶8, 43; Doc.1-1; Doc.1-2; Doc.6. And Plaintiffs request an injunction preventing PRA "from publishing … any copyrighted version of the *UB-04 Manual*." Compl.26.

Dismissing Plaintiffs' claims relating to other editions would not be an improper dismissal of "*parts* of claims." Opp.25. Each edition of the *Manual* is a distinct work, and each distinct act of copying "an infringing work … gives rise to a discrete 'claim.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). Although the Complaint labels these discrete claims with a single "count," that label does not control. *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992).

## IV. At minimum, Count III must be dismissed.

At the very least, Count III must fall. MTD.29-30. "Damages are an essential element of plaintiffs' breach of contract claim," yet Plaintiffs fail to allege any cognizable anticipated damages from the mere fact of PRA disputing the validity of Plaintiffs' copyright in court. *Kulhanek v. Casper*, 232 N.E.3d 1101, 1110 (Ill. App. Ct. 2023). When "a wrongful act … involve[s] the plaintiff in litigation *with others*," "legal expenses" can be "recoverable as ordinary damages," but not when the plaintiff seeks expenses "for merely defending or prosecuting a lawsuit" against the opposing party. *Sorenson v. Fio Rito*, 413 N.E.2d 47, 51-52 (Ill. App. Ct. 1980) (emphasis added); *contra* Opp.30.

## CONCLUSION

This Court should dismiss the complaint with prejudice for failure to state a claim.

Dated: April 24, 2026

Respectfully submitted,

_/s/ *Jeffrey M. Harris*
Jeffrey M. Harris*
Cameron T. Norris
Ryan M. Proctor*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
cam@consovoymccarthy.com

**admitted pro hac vice*

*Counsel for Defendant*